# Richmond.

## Washington Luna Park Co. v. Goodrich.

### January 13, 1910.

### Absent, Buchanan, J.

1. Pleading—*Declaration—Sufficiency—Injury to Passenger—Collision of Cars.*—In an action for damages by a passenger for hire on a "roller coaster" car operated by an amusement company, a declaration which alleges that the plaintiff was injured by a collision between two of these cars, both of which were operated and controlled by the defendant, and that this collision and the consequent injury was the result of negligence on its part, sufficiently informs the defendant of the case which it will be required to meet, and is good on demurrer. It is unnecessary to describe the construction and operation of the "roller coaster."

2. Damages—*Special Damages—Failure to Allege—Evidence—Harmless Error.*—Where the declaration in an action for a personal injury alleged that the injury hindered and prevented, and would in the future hinder and prevent, the plaintiff (who was the proprietor of a grocery store) from transacting his necessary business affairs, but did not otherwise claim any special damages, the fact that the plaintiff was asked a series of questions about the effect on his business which he could not specifically answer, could not have operated to the prejudice of the defendant, and the verdict of the jury will not, on that account, be set aside.

3. Appeal and Error—*Exclusion of Evidence—Bill of Exception.*—The exclusion of the answer of a witness to a question is not a ground of error unless the bill of exception shows what answer was expected.

4. Damages—*Excessive—Personal Injury.*—A verdict of $1,200 for a personal injury cannot be set aside as excessive where it appears that the plaintiff's foot and ankle were injured, and he was rendered wholly unable to attend to business for six weeks, had suffered continuous pain up to time of trial—a period of twenty weeks—and would probably continue to suffer.

5. VERDICTS—*Quotient—Impeachment by Jurors.*—If jurors agree in advance that each shall put down the amount of his verdict and the aggregate of the sums put down shall be divided by the number of jurors and the quotient be their verdict, this invalidates the verdict if established by competent evidence, but the evidence in the case at bar is not sufficient to establish that fact, and generally jurors should not be permitted to testify to their own misconduct in the jury room.

6. TRIAL—*Agreement of Counsel—Withdrawal—Discretion of Trial Court.*—It is within the discretion of the trial court to permit counsel for a party who has, through inadvertence, assented to a procedure injurious to his client, to withdraw that assent, and object, where it involves no such change of the situation as would operate prejudicially to the other party. If the discretion be abused, it may be corrected upon a writ of error.

Error to a judgment of the Circuit Court of Alexandria county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Moore, Barbour & Keith,* for the plaintiff in error.

*Charles F. Diggs* and *Leo. P. Harlow,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

This was a suit brought against the Washington Luna Park Company, a corporation, by James H. Goodrich, to recover damages for an injury which he received on the 27th of June, 1906.

It appears from the declaration that the defendant company maintained an amusement park and operated a "roller coaster" for the transportation of passengers for hire; that the plaintiff, at the special instance and request of the defendant company, became and was a passenger upon a car operated upon and in connection with said "roller coaster" for a certain reward then

paid, and it thereby became the duty of the defendant to use due and proper care that the plaintiff should be carried safely on said "roller coaster," but that the defendant, not regarding its duty, did not use due and proper care, but wholly neglected so to do, and so negligently and carelessly maintained, operated and managed the said roller coaster and the cars operated upon the same that while the plaintiff was a passenger for hire, as aforesaid, upon one of the said cars and was in the exercise of due and reasonable care, "the said car collided with another car on the said roller coaster, which collision resulted in an injury to the plaintiff's left leg, ankle and foot, the said leg, ankle and foot being thereby sprained, strained and made sore and stiff and otherwise much wounded and lamed, and they remained so for a long period of time, to-wit, to the present time; and as a result of the said injury the plaintiff became and is still lame in his left foot, leg and ankle, and will ever continue to be, and underwent great pain, mental and bodily anguish, and was hindered and prevented, and will in the future be, from performing and transacting his necessary affairs."

There was a demurrer to this declaration, which the court overruled, and the defendant pleaded not guilty. The trial resulted in a verdict in favor of the plaintiff for $2,000, which the circuit court reduced to $1,200 and entered judgment for that sum, and the case is before us upon a writ of error.

The first error assigned is to the ruling of the court upon the demurrer to the declaration.

We are of opinion that the declaration is sufficient. It is true that it does not undertake to describe the construction and operation of a roller coaster, but it does appear that it was one of the many amusement devices operated for hire; that there was more than one car being operated, all of which were under the control of the defendant company; and that the plaintiff was injured by a collision which occurred between two of these cars. We think that this fairly informed the defendant of the case which it would be required to meet. The charge is that

the plaintiff, without negligence upon his part, having paid the fare or hire required of him, was accepted as a passenger, and upon the invitation of the defendant company took his place upon the roller coaster, which, being negligently operated by the defendant company, came into collision with another roller coaster car operated by the same company, resulting in the injury to the plaintiff of which he complains. The controlling fact stated in the declaration is the collision between the two cars, both of which were operated and controlled by the defendant company, and that this collision and the consequent injury was the result of negligence upon its part.

The next error assigned is to the action of the court in permitting the plaintiff to testify that the injury to his ankle had affected his grocery business, upon the ground that there was no allegation of special damages thus arising in the declaration, and though the plaintiff was unable to give even an estimate of the amount of the damage claimed, thus leaving the jury free to conjecture damage, unhampered even by estimates of the plaintiff himself.

The declaration does allege that the injury hindered and prevented, and will in the future hinder and prevent, him from transacting his necessary affairs and business, as constituting one of the elements of damage which he had suffered. It seems that he was the proprietor of a grocery store, and that he was disabled for a considerable period of time. It is true that he could not state the precise damage which he had sustained, and what appears in the witness' testimony really seems to be a series of questions propounded by counsel for the plaintiff which he was unable specifically to answer. We cannot think that it would operate or could have operated to the prejudice of plaintiff in error.

The third error assigned is to the following question asked Dr. Lemon, who was the attending physician of the plaintiff: "In your talk with Dr. Hudson, when something was said about a suit for damages on the part of Mr. Goodrich, didn't you

laugh at the idea?" Defendant in error interposed an objection to this question and the objection was sustained by the court. The witness did not answer the question, and it does not appear from the bill of exception what his answer would have been. Were we to reverse the case upon this ground and send it back for a new trial, it might be that Dr. Lemon would answer the question in the negative and say that he did not laugh. It might appear that he had treated the subject, not with levity, but in the most serious manner. But however this may be, we have held time and again that where a question is objected to it must appear what the answer would have been or the court will not consider the objection.

Nor can we set aside the verdict as being contrary to the evidence. That the injury was received as a result of negligence upon the part of the plaintiff in error is sufficiently proved. The injury was sustained in June, 1906, and was of such character that at the time of the trial, in February, 1908, the plaintiff's foot and ankle were still wrapped in a silk-rubber bandage, and he testified that he was unable to attend to business at all for about six weeks, and that he still suffered continuous pain. The testimony of Dr. Lemon was that it was reasonably probable that he would continue to suffer. The jury, as we have seen, rendered a verdict for $2,000, which the court reduced to $1,200, and we are unable to say that that sum is excessive compensation for the injury sustained.

It is charged that the jury was guilty of misconduct; that when it came to a consideration of the case the jurors bound themselves by an agreement that each would put opposite his name the amount which he thought the plaintiff should recover; that these figures should be added up, divided by twelve and the quotient would be accepted as the verdict of the jury. Where this is done and the fact is established by competent evidence it is agreed that it invalidates the verdict. The evidence relied upon in this case to prove the fact of the antecedent agreement to return what is known as a quotient verdict is that scraps of

paper were found in the jury room after it was vacated with the names of the jurymen and the amounts opposite their names. It seems that these several amounts when added together and divided by twelve produced a result or quotient of about $2,300 or $2,400; that then a juror suggested that the verdict should be for $2,000, which was agreed upon.

With respect to this much of the evidence we shall observe that in the first place the scraps of paper relied upon do not establish the fact.

Speaking of such a paper in *Moses* v. *Cromwell,* 78 Va. 675, this court said: "It is plain that the paper alone does not furnish such evidence as would justify the court in setting aside the verdict of the jury. Nay, it could not be said to raise even a bare suspicion that the verdict was arrived at in an irregular way, for it could not be made to appear that this process of figuration was not gone into purely for the purpose of seeing what the result would be, and that the result was finally adopted as the deliberate judgment of each juror, after full discussion and without any prior agreement to be bound by it."

In this case there is the additional difficulty that the jury were not bound by it, but that a wholly different amount from the quotient ascertained by dividing the sum of the several estimates of the jurors by twelve was established as the verdict.

But an affidavit of one of the counsel is produced, detailing a conversation between himself and one of the jurors to the effect that the verdict was reached by an understanding that each of the jury would write upon a strip of paper the amount he was willing to give the plaintiff, upon the understanding that those amounts would be added together and the aggregate amount divided by twelve; that this was done and an odd amount arrived at, and one member of the jury suggested that it would look strange to render a verdict for this amount; and that thereupon another member of the jury suggested that they make the verdict $2,000, which was immediately agreed to.

It is said in 4 Minor, Pt. 1 (1st ed.), p. 761, that "Proof by

the jurors themselves of misbehavior, or of the motives which influenced the jury, or any of them, has been received always with the greatest caution (*Cochran* v. *Street,* 1 Wash., 80) ; and the sentiment in opposition has grown progressively stronger, until in general it has come to be established doctrine that jurors are inadmissible for the purpose in question.   Such is the apprehension of opening a door to tampering with them, that it is deemed more prudent, upon the whole, to permit even gross irregularities to pass unchallenged rather than to allow any inquiry to be propounded to the jurors touching the conduct of the jury, and especially touching the motives and reasons which influenced their judgment."   See *Thompson's Case,* 8 Gratt., 641, 650; *Bull's Case,* 14 Gratt. 613, 626; *Read's Case,* 22 Gratt. 947.

In *Bull's Case, supra,* it is said: "In view of all the authorities, and of the reason on which they are founded, we think that, as a general rule, the testimony of jurors ought not to be received to impeach their verdict, especially on the ground of their own misconduct.   And. without intending to decide that there are no exceptions to the rule, we think that even in cases in which the testimony might be admissible, it ought to be received with very great caution.   A contrary rule would hold out to unsuccessful parties and their friends the strongest temptation to tamper with jurors after their discharge, and would otherwise be productive of the greatest evils."

It appears in this case that when the question was first brought to the attention of the court counsel for defendant in error consented to proof of the conversation with the juror and cross-examined the witness upon the subject.   Subsequently the court, on motion of the plaintiff, excluded all of the evidence given as to what transpired between counsel and the juror, and refused to consider the same, and to this ruling of the court the defendant excepted.

In this there was no error.   In the first place it was within the discretion of the court to permit the defendant in error to

withdraw its assent to the introduction of the evidence. Plaintiff in error had certainly suffered no prejudice by its introduction, and if counsel for defendant in error, by inadvertence, had assented to a procedure injurious to his client, it was for the court to say whether or not, under all the circumstances, counsel should be permitted to withdraw the assent and make objection. This we apprehend is frequently done where it has involved no such change of the situation as would operate prejudicially to the other party, and is within the discretion of the trial court— a judicial discretion, it may be, which, if abused, may be corrected upon a writ of error.

But the case before us is yet stronger than the one we have stated, for here the evidence of conversation with a juror, in order to vitiate the verdict, is excluded upon the ground of public policy, and the court should of its own motion have declined to hear the evidence unless the facts brought the case plainly within some exception to the rule. We do not find an exception stated in any of the cases or treatises upon the subject, but it is only suggested in a general way and out of abundant caution that some exceptions may exist.

Upon the whole case we are of opinion that there is no error in the judgment, which is affirmed.

*Affirmed.*