## 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## M. C. RUDD V. COMMONWEALTH.

### March 16, 1922.

### Absent, West, J.

1. CHANGE OF VENUE—*Inability to Obtain Impartial Jury—Impartial Jury Actually Obtained.*—A denial of a motion for a change of venue, pursuant to section 4663 of the Code of 1919, on the ground that the case could not be fairly or impartially tried by a jury from the vicinity, was not error, first, because an impartial jury, in contemplation of law, was in fact obtained; and, secondly, because the proper remedy in such case is by motion for a jury to be summoned from some other city or county, and not by motion for a change of venue.

2. CHANGE OF VENUE—*Ground that Accused Could not Receive Impartial Trial Because of Public Hostility—Impartial Jury Obtained.*—In so far as a motion for a change of venue rested on the ground that the case could not be fairly or impartially tried in the city where the indictment was found because of the hostile public feeling and prejudice existing in such city against the accused, the facts that an impartial jury in contemplation of law was obtained from that city, and that no motion was made for a jury to be summoned from elsewhere, are not conclusive against the right of the accused to a change of venue. But the fact that an impartial jury was obtained while not conclusive against such motion is a circumstance to be considered.

3. CHANGE OF VENUE—*Discretion of Trial Court—Appeal and Error.*—The trial court is allowed a wide discretion in the matter of ordering a change of venue, and its ruling will not be disturbed unless it plainly appears that the discretion has been improperly exercised.

4. CHANGE OF VENUE—*Inability to Secure a Fair Trial—How Fact Established.*—The mere apprehension of the accused, or his belief, that he cannot secure a fair trial in the city or county in which he is indicted, is not sufficient to support a motion for a change of venue. He must establish by independent and disinterested testimony such facts as make it appear probable, at least, that his fears and belief are well founded.

5.  CHANGE OF VENUE—*Inability to Obtain a Fair Trial—Rumors.*—
    Where there was no evidence before the trial court tending to
    show that accused could not obtain a fair trial on account of
    prejudice against him at the place of trial, other than a mere
    rumor heard on the streets by certain witnesses, who did not
    themselves believe that such rumor had any foundation in fact,
    and accused himself had no apprehension of the existence of
    any such hostile public sentiment at the place of trial as would
    influence a jury to his prejudice when once properly selected,
    the trial court was plainly right in refusing to entertain a
    motion for a change of venue.
6.  CHANGE OF VENUE—*Public Subscription to Aid Prosecution.*—
    That influential citizens have raised a fund by private subscrip-
    tion, and have employed counsel to aid in the prosecution of
    accused, does not furnish sufficient ground for a change of
    venue.
7.  JURY—*Summoning—Misdemeanor Cases—Sections 4895 and 4896
    of the Code of 1919.*—As provided in sections 4895 and 4896 of
    the Code of 1919, jurors summoned and in attendance upon any
    term of court for the trial of felony cases, whether summoned
    by the first or a subsequent *venire facias* issued for such jurors,
    may be used for the trial of all misdemeanor, as well as felony,
    cases, to be tried at such term.
8.  JURY—*Venire Facias—Second Venire Facias—Assignment of
    Error—Assumption of Facts not Apparent from the Record.*—
    An assignment of error raised the question that under section
    4896, Code of 1919, the trial court had no authority to award
    a second *venire facias* "while there were sufficient jurors sum-
    moned by virtue of the first venire."
    *Held:* That, if this statement was intended to mean that there
    were, of the jurors who had been summoned by virtue of the
    first *venire facias,* a sufficient number in attendance upon the
    court to try all misdemeanor cases, including the case in judg-
    ment, the statement assumed a fact which did not appear from
    the record, and was therefore untenable.
9.  JURY—*Venire Facias—Second Venire Facias—Section 4896, Code
    of 1919—Misdemeanor Cases.*—The authority of the court,
    under section 4896, Code of 1919, to award a second *venire
    facias.* does not depend upon whether the jurors already in
    attendance are sufficient for the trial of the misdemeanor cases
    which are to be tried. That is immaterial. By the express
    terms of the statute, if any felony case requires the issuance
    of a second *venire facias* in order to secure a jury for its trial
    as therein provided, the court has the authority conferred upon
    it of awardng a second *venire facias,* in which case, also by the

express terms of the statute, the jurors so summoned thereby may be used for the trial of all misdemeanor cases, though of course the fact that the felony case required the issuance of a second *venire facias* may be questioned in the court below.

10. APPEAL AND ERROR—*Objections not Presented by the Assignments of Error.*—Objections to the validity of the procedure by which a jury was obtained not presented in the assignments of error will not be considered on appeal.

11. APPEAL AND ERROR—*Assignments of Error—Rejection of Testimony—Refusal to Allow Questions—Answers Expected.*—Where the record does not show what the answers of certain witnesses would have been to questions which the trial court refused to allow to be put to them, the assignments of error based on such refusal will not be considered on appeal.

Error to a judgment of the Hustings Court of the city of Portsmouth.

*Affirmed.*

There was in this case a trial by jury, resulting in a verdict finding the accused guilty of selling ardent spirits, as charged in the indictment, and fixing his punishment at six months in jail and a fine of $500.00. The judgment under review was entered accordingly.

There is no assignment of error which challenges the sufficiency of the evidence to support the verdict. There is an assignment of error that the court erred in refusing to set aside the verdict and grant the accused a new trial, but that assignment is based upon the following grounds: (1) The refusal of the court to grant a change of venue; (2) the court's refusal to quash the venire; (3) the court's action in disallowing certain questions to be asked of certain witnesses by counsel for the accused; and (4) the granting of a certain instruction at the request of the Commonwealth. These grounds are also made the basis of separate assignments of error. In the oral argument for the accused the assignment of error relating to the instruction was abandoned.

50

The case being thus presented upon the appeal, no statement of the evidence, or of the facts touching the merits of the case is necessary.

The facts, and the evidence for the accused and for the Commonwealth touching certain matters in controversy, upon the motion of the accused for a change of venue, may be summarized as follows:

The uncontroverted facts are that at the time the accused was arrested, charged with the offense of which he was subsequently convicted, there was an association of a group of citizens of the city of Portsmouth, called the Council of Christian Citizens, made up of pastors and laymen of the Protestant churches of the city, who employed detectives to investigate conditions in the city with a view of ascertaining whether violations of law existed, and, if so, what violations. This association raised a fund to defray the expenses of such investigation, by soliciting and obtaining voluntary private subscriptions from a large number of the citizens of the city, but what proportion of the citizens does not appear from the evidence. And the accused was arrested and charged with the offense aforesaid as the result of the investigation and testimony of two of the detectives employed as aforesaid.

The testimony for the accused is to the effect that, at the time of the motion for the change of venue, there was street talk, a street rumor, heard frequently on the streets of Portsmouth, to the effect that any and all persons charged with crime as a result of the investigation aforesaid, could not get a fair trial by a jury from Portsmouth. It appears, however, from this very testimony for the accused that this street talk or rumor did not correctly reflect the public opinion of the city. Indeed the accused himself testified to the effect that he was of the opinion that there was no serious difficulty in the way of obtaining a jury from the city of Portsmouth who would observe their oaths and give him

a fair and impartial trial; and in this opinion all of the witnesses for the accused substantially concurred.

It appears from the testimony of the accused that what he feared was that he would not get a fair trial by a jury selected from the jurors in attendance upon the court during the term at which he was tried. He stated that there were specific men among them who, as he thought, would not give him a fair and impartial trial.

The testimony for the Commonwealth is to the effect that at the time of the motion for the change of venue there was in the city of Portsmouth a very decided public interest in law enforcement, including the prohibition law, and a determination on the part of many of the good citizens of the city that the law should be enforced against those guilty of violating it; but that this did not go to the extent of the desire on the part of any one that there should be any conviction not warranted by the evidence in the particular case. And the testimony for the Commonwealth is to the effect that the accused could obtain a fair and impartial trial in the city of Portsmouth before a jury obtained from that city.

From the jurors who had been regularly summoned, and were in attendance upon the court for the trial of felony cases, the court impaneled the jury for the trial of the case in judgment, obtaining from that source the requisite number of jurors who were found, upon examination on their *voir dire*, to be free from exception.

*S. M. Brandt, Roland Thorp* and *Richard J. Davis*, for the plaintiff in error.

*John R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General,* and *Leon M. Bazile, Second Assistant Attorney General,* for the Commonwealth.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The questions presented by the assignments of error, and not abandoned upon the oral argument, will be disposed of in their order as stated below.

[1] 1. Did the trial court err in overruling the motion of the accused for a change of venue, pursuant to section 4663 of the Code, on the ground that the case could not be fairly or impartially tried in, or by a jury from the city of Portsmouth, because of the hostile public feeling and prejudice existing in such city against the accused?

This question must be answered in the negative.

In so far as the motion for change of venue rests on the ground that a fair and impartial jury to try the case could not be obtained from the city, it was properly overruled, for two reasons: First, because an impartial jury, in contemplation of law, was in fact obtained from the city (*Bowles' Case,* 103 Va. 823, 48 S. E. 527, and cases cited); and, secondly, because, where the sole difficulty to be overcome in order to secure a fair and impartial trial consists in the difficulty in obtaining a jury from the city or county where the trial is had, the proper remedy is by motion for a jury to be summoned from some other city or county, under the statute in such case made and provided (*Wright's Case,* 33 Gratt. [74 Va.] 880; *Joyce's Case,* 78 Va. 287; *Uzzle's Case,* 107 Va. 926, 60 S. E. 652).

As said in *Bowles' Case:* "The law has provided the test as to the fitness of a person to sit upon a jury in the trial of criminal cases, and if, by applying this test, an impartial jury was in fact secured in the county where the trial was to take place, a conclusive presumption arises that the motion for a change of venue was unfounded."

As said in *Uzzle's Case:* "It is well settled that, where an application for a change of venue is based simply on the ground of difficulty in obtaining jurors in the county or corporation free from exception, it must be preceded by an application to summon jurors beyond such county. *Wright's*

*Case,* 33 Gratt. (74 Va.) 880; *Joyce's Case,* 78 Va. 287."

[2-4] It is true, however, that in so far as the motion for change of venue rests on the ground that the case could not be fairly or impartially tried in the city of Portsmouth, because of the hostile public feeling and prejudice existing in such city against the accused, the facts that an impartial jury in contemplation of law was obtained from that city, and that no motion was made for a jury to be summoned from elsewhere, are not conclusive against the right of the accused to a change of venue. *Uzzle's Case,* 107 Va. 919, 60 S. E. 52.

In this connection it must be borne in mind, however, that it is well settled that the trial court is allowed a wide discretion in the matter of ordering a change of venue, and its ruling will not be disturbed unless it plainly appears that the discretion has been improperly exercised. *Looney's Case,* 115 Va. 921, 78 S. E. 625; *Thompson's Case,* 131 Va. 847, 109 S. E. 447. The mere apprehension of the accused, or his belief, that he cannot secure a fair trial in the city or county in which he is indicted, is not sufficient to support a motion for a change of venue. As said in *Thompson's Case, supra:* "He must establish by 'independent and disinterested testimony such facts as make it appear probable at least that his fears and beliefs are well founded,'" quoting from *Wormeley's Case,* 10 Gratt. (51 Va.) 658. Moreover, while the fact that a jury, free from exception upon their examination on their *voir dire,* has been obtained from the city or county in which the trial is had, is not conclusive against the motion for a change of venue, it is a circumstance to be considered along with all the other evidence bearing upon the issue presented by the motion.

[5] Coming now to the specific consideration of the issue last mentioned, we find that the precise question presented for our decision to be this:

2. Was the evidence such that it should have convinced

the trial court that the hostile public feeling and prejudice against the accused in the city of Portsmouth was so great that, in the trial of the accused at that place by any jury, it was likely that the jury would be so influenced by the popular feeling, as to render it probable, at least, that the accused would not have a fair trial?

There was no evidence before the trial court tending to show that such a result was to be apprehended, other than a mere rumor heard on the streets by certain witnesses. As appears from their testimony, these very witnesses were not convinced that the rumor had any foundation in fact. On the contrary, their personal opinion was that it had no such foundation. Such, too, was the opinion of the accused himself. He, as his testimony shows, had no apprehension of the existence of any such hostile public sentiment at the place of trial as would influence a jury to his prejudice when once properly selected. What he feared was that an impartial jury would not be selected in the first instance from the jurors in attendance upon the court.

Such being the situation as made to appear by the evidence on the motion for change of venue, any further detailed consideration of the special circumstances of the case becomes unnecessary; and we have no hesitancy in holding that the trial court was plainly right in refusing to change the venue.

[6] The proper weight to be given, upon a motion for a change of venue, to the circumstances that influential citizens have raised a fund by private subscription, and have employed counsel to aid in the prosecution of the accused, is dealt with in *Wormeley's Case, supra,* 10 Gratt. (51 Va.), at pp. 672-4. As there held, such circumstances do not of themselves furnish sufficient ground for a change of venue.

3. Did the court err in refusing to quash the second *venire facias* by which certain of the jurors were summoned who were in attendance upon the term of court at which the

accused was tried, by which *venire facias* such jurors were summoned to complete the panel for the trial of a certain felony case, one of which jurors was used as one of the jury who tried the acused?

This question must be answered in the negative.

[7] As provided in section 4895 and 4896 of the Code, jurors summoned and in attendance upon any term of court for the trial of felony cases, whether summoned by the first or a subsequent *venire facias* issued for such jurors, may be used for the trial of all misdemeanor, as well as felony, cases to be tried at such term.

Section 4895 contains the following provision, namely: "At one term of the court only one jury shall be summoned unless the court or judge otherwise direct." And section 4896, so far as material, provides as follows: "In any case of felony, where a sufficient number of jurors to constitute a panel of twenty free from exception cannot be had from those summoned and in attendance, * * * or when the *venire facias,* or panel has been quashed for any cause, the court may direct another *venire facias* and cause to be summoned * * * so many persons as may be deemed necessary to obtain a panel of twenty free from exception * * *."

It appears from the record before us that at the term of court in question, the first *venire facias* was awarded by order of court entered on March 1st, commanding the sergeant of the city of Portsmouth to summon and cause to come before the court on the 3rd day of March at ten o'clock A. M. twenty persons of that city to be taken from a list of twenty-four persons to be furnished by the clerk of the court, for the trial of Joe Foster, qualified in all respects to serve as jurors to recognize on their oaths whether the said Joe Foster be guilty of the felony whereof he stands accused.

Nineteen persons only were summoned by the sergeant under said *venire facias.*

So far as the record discloses, the Joe Foster case was not tried as expected.

It further appears from the record before us that at the same term of court, on March 4th, the second *venire facias* was awarded by order of court commanding the sergeant to summon and cause to come before the court on that day at 3 o'clock P. M. thirteen persons of that city, to be taken from a, list to be furnished by the court "to complete the panel of jurors for the trial of E. A. Martin" qualified, etc., to recognize on their oaths whether the said E. A. Martin be guilty of the felony whereof he stands accused. All of these thirteen persons were accordingly summoned.

On the 7th day of March, at the same term of court, the misdemeanor case of the accused, which we have under review, was called for trial. Thereupon, after the motion of the accused aforesaid for a change of venue had been overruled, the accused pleaded not guilty, to which plea the Commonwealth replied generally, and issue was joined thereon. Thereupon, the accused moved the court to quash the said second *venire facias*, which motion the court overruled; and thereupon, from those jurors who had been summoned at that term for the trial of Joe Foster and E. A. Martin, charged with felonies, the court proceeded to empanel a jury for the trial of the misdemeanor case under review, and seven men, after examination upon their *voir dire*, having been obtained free from exception, the Commonwealth having erased one and the accused one, the remaining five constituted the jury for the trial of the accused.

It does not appear from the record before us how many of the nineteen persons summoned, as aforesaid, under the first *venire facias*, or how many of the thirteen summoned under the second *venire facias*, attended court in accordance with their summons, or were still in attendance upon the court on March 7th, when the jury was selected in the

case in judgment. It appears from the record, however, that four of the five composing the latter jury, as finally constituted, were among the nineteen summoned by the first *venire facias*, and the fifth juror was one of those summoned by the second *venire facias*.

[8] The position taken in the assignment of error which raises the question under consideration is this: That, under section 4896, aforesaid, the court had no authority to award the second *venire facias* "while there were sufficient jurors summoned by virtue of the first venire."

If this statement is intended to mean, as we suppose it does, that there were, of the jurors who had been summoned by virtue of the first venire, a sufficient number in attendance upon the court to try all misdemeanor cases which were to be tried at the term, including the case in judgment, the statement assumes a fact which does not appear from the record which the accused has brought before us. For this reason, if there were no other, we would be compelled to hold the position taken to be untenable.

[9] But the authority of the court, under section 4896, to award the second *venire facias* did not depend upon whether the jurors already in attendance were sufficient for the trial of the misdemeanor cases which were to be tried. That was immaterial. By the express terms of the statute, if any felony case required the issuance of the second *venire facias* in order to secure a jury for its trial as therein provided, the court had the authority conferred upon it of awarding the second *venire facias*, in which case, also by the express terms of the statute, the jurors so summoned thereby might be used for the trial of all misdemeanor cases. And it appears from the record, as it is certified to us, that the E. A. Martin felony case required the issuance of the second *venire facias* in order to complete the panel for its trial. This, in any aspect of the case, is decisive of the question under consideration adversely to the accused.

We do not, of course mean to say, that the last-named fact could not have been questioned in the court below, issue taken upon it and the contrary fact, if it was a fact, have been made to appear. But that was not done.

[10] There are a number of other positions taken in the brief for the accused, which were also urged in oral argument, challenging the validity of the procedure by which the jury in the instant case was obtained. But, as the positions were not presented in the assignments of error, no further reference need be made to them.

[11] 4. The only matters which remain for our consideration, which are sought to be presented by the assignments of error, concern the refusal of the trial court to allow certain questions to be asked of certain witnesses by counsel for the accused.

This action of the court was the same in substance as refusing to allow the witnesses to answer such questions.

The record does not show what the answers of these witnesses would have been to these questions, nor that there was any avowal of what answers were expected. It is well settled that in such cases the assignments of error will not be considered on appeal. *Washington, etc., Co.* v. *Goodrich,* 110 Va. 692, 66 S. E. 977; *Foy* v. *Commonwealth,* decided at this term of court, *ante,* p. 671, 111 S. E. 269.

The case will be affirmed.

*Affirmed.*