# OCTOBER, 1940.

DAVID P. BRADFORD, RESPONDENT, v. J. M. KURN and JOHN G. LONSDALE, TRUSTEES IN BANKRUPTCY OF THE ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, A CORPORATION, APPELLANTS.—146 S. W. (2d) 644.

Kansas City Court of Appeals. December 2, 1940.

*Jerome Walsh, Thomas R. Lawler* and *Roy W. Rucker* for respondent.

*E. G. Nahler, M. J. Henderson, Thos. E. Deacy* and *Henderson, Deacy, Henderson & Swofford* for appellants.

SPERRY, C.—Plaintiff, David P. Bradford, sued defendants, J. M. Kurn and John G. Lonsdale, Trustees in Bankruptcy of the St. Louis-San-Francisco Railway Company, a corporation. Trial to a jury resulted in judgment for defendants, whereupon plaintiff moved for new trial. The motion was sustained, the court assigning as reason therefor that the verdict was against the weight of the evidence. From the order granting new trial defendants have appealed.

Facts about which there is no dispute established that plaintiff was employed as a yardman by St. Louis-San Francisco Railway Company on September 16, 1929; that there was then in force a written working agreement between the Railway Company and the Brotherhood of Railway Trainmen, which contract became a part of plaintiff's contract of employment with said Railway Company; that plaintiff worked under the terms of said contract from the date of his employment until November 17, 1930, when he was notified that the

"extra board," of which plaintiff was one, was being cut due to decreased business, and he was given a service letter containing the following:

"Reason for leaving service—reduction in force," and that he was never thereafter recalled to service.

Pertinent sections of the "working agreement" above mentioned are as follows:

.    .    .    .    .    .    .

"(c) Reduction in force.

"When yard forces are reduced, the men involved will be displaced in the order of their seniority. When a vacancy occurs or new runs are created, the senior men will have choice of runs or vacancy.

"(d) Yardmen laid off account reduction in force will be returned to service when forces are increased in order of their seniority, provided they return to actual service within thirty (30) days from the date their services are required, unless the management has good and sufficient cause for not returning them to service in line with their seniority, in which event the committee will be informed reasons therefor. This to apply to any Yardman laid off in force reduction subsequent to October 1, 1920."

.    .    .    .    .    .    .

"ARTICLE 17.

"(a) When objections or charges are made against any yard man, they shall be put in writing and should convey a full statement of the objections or charges.

"(b) Yard men will not be discharged, suspended or given demerit marks without just and sufficient cause. Before inflicting punishment in form of dismissal, suspension or asserting demerit marks, the proper official will hold investigation. They may be present at the investigation together with a disinterested employee of their choice. All decisions will be rendered within five days after investigation is held. In case of dismissal, suspension or demerit marks, if any yard man thinks sentence unjust, he shall have the right within ten days to refer his case by written statement to his Superintendent. Within ten days of receipt of this notice, the case shall have a thorough investigation by a proper officer of the Company, at which investigation he may be present if he so desires, and also be represented by any disinterested employe of his choice. In case he is dissatisfied with result of investigation, he shall have the right of appeal to general officers. In case punishment, in the form of dismissal or suspension is inflicted and subsequently found to be unjust, he shall be reinstated and paid at regular rates for all time lost."    .    .    .

It is undisputed that the Railway Company went into receivership and defendants were appointed as temporary trustees of the property

on September 26, 1933, and were appointed permanent trustees on October 28, 1933, and are now and have ever since been in charge of the property and its operation under the orders of the United States District Court for the Eastern District of Missouri.

The following stipulation was offered in evidence, and was admitted without objection:

## "STIPULATION.

"It is hereby stipulated and agreed by and between the parties hereto that the St. Louis-San Francisco Railway Company entered into a contract with the Brotherhood of Railway Trainmen upon November 1st, 1919; that thereafter the said contract was amended or revised, effective April 1st, 1924, and that said contract was in full force and effect at the time of the appoinment of the receiver for said company in the United States District Court at St. Louis; that thereafter and on or about October 1st, 1933, James M. Kurn and John G. Lonsdale were appointed as trustees in Bankruptcy for said company, by said Federal Court; that said contract above referred to has neither been formally adopted nor rejected by the trustees, but as a matter of fact the trustees have operated under this contract since their appointment as trustees, became effective October 1st, 1933."

Evidence on behalf of plaintiff tended to prove that he was "senior," in the right of employment, to R. D. Pierce, who was called to work by defendants on or about January 1, 1934; that he was senior to A. C. McLaughlin, who was called to work on or about January 1, 1934; that the seniority list of employees of the Railway Company, as it existed on November 17, 1930, established plaintiff's right to be recalled to service, if and when more yardmen were required, before either Pierce or McLaughlin were called; that plaintiff was at all times ready, able, and willing to work for defendants until date of trial, December 15, 1939; and that he had kept defendants informed as to his whereabouts and availability for employment at all times, but that he had never been notified to report for employment. He also offered evidence tending to prove that his earnings, if he had been permitted to work for defendants from and after January 1, 1934, until date of trial, would have been substantially more than he had been able to earn at other employment during said period of time.

Defendants first challenge the authority of the trial court, in view of the particular facts in evidence in this case, to grant a new trial. The Supreme Court has said that:

"Under a statute of long standing (Now Sec. 1001, R. S. Mo. 1929) a trial court has a broad discretionary power to grant one new trial on the ground that the verdict is against the evidence; and the general rule is that the discretion exercised by the trial judge in that respect will not be disturbed, unless it be shown that a converse verdict could

not for lack of supporting evidence be permitted to stand." [Davis v. Johnson, 332 Mo. 417, l. c. 421.]

Unless, therefore, under the evidence in this case *the jury could not have returned a verdict for plaintiff* the judgment must be affirmed.

Defendants contend that their demurrer, offered at the close of the case, should have been sustained. In support of that contention they urge that there was no valid contract of employment existing as between plaintiff and the Railway Company on October 28, 1933, when defendants took over the operation of the bankrupt Railway Company. We think there was ample evidence upon which a jury could have found that such a contract of employment did exist. [McGee v. St. Joseph Belt Ry. Co., 133 S. W. (2d) 675.] There being sufficient evidence to submit the question to the jury, the court could not properly sustain the demurrer on this ground.

However, defendants say that even if it be granted that such a contract did exist as between plaintiff and the Railway Company same could not be binding on them, after the bankruptcy of the Railway Company, unless defendants specifically assumed the obligations of the working agreement between the Railway Company and the Brotherhood of Railway Trainmen, above mentioned, in writing, filed in and approved by the United States District Court for the Eastern District of Missouri. This point has been ruled adversely to defendants' position by the Springfield Court of Appeals. Ward v. Kurn, 132 S. W. (2d) 245, l. c. 250, where the court held that such a contract, identical with the one here considered, could be, and was, ratified by the course of conduct of defendants so that same became binding on them as fully as though said ratification had been in writing filed with and approved by the court. We adhere to the principle there declared.

Lastly, defendants urge that there is no substantial evidence in this case tending to prove that defendants have actually ratified and adopted said contract of employment, and are working under the "working agreement" hereinbefore mentioned. They contend that the facts in evidence here distinguishes this case from that of Ward v. Kurn, *supra.* In the latter case there was a stipulation in evidence, l. c. 249, wherein it was agreed:

". . . that defendants, J. M. Kurn and John G. Lonsdale, first as receivers and subsequently as trustees, *continuously* from and after the date of their respective appointments as such, have operated and are operating the St. Louis-San Francisco Railway Company and its property under said 'Yardmen's Schedule;' and, that said defendants, as receivers and subsequently as trustees, *continuously* from and after the dates of their respective appointments as such, have recognized and consented to, and do now recognize said 'Yardmen's Schedule' as the contract of employment with all yardmen in the employ of said Railway Company and said defendants." (Italics ours.)

Defendants contend that the stipulation in the case at bar fails to state that they have "continuously from and after the dates of their respective appointments" operated under the "Yardmen's Schedule" or working agreement.

The language of the stipulation in the case at bar is as follows:

"As a matter of fact the trustees have operated under this contract since their appointment as trustees, became effective October 1st, 1933."

The language used in the stipulation must be liberally construed and all inferences favorable to plaintiff's contention must be drawn therefrom when we consider it with reference to a demurrer to the evidence. When so considered we think the fair construction of the language used is that the trustees have operated under that contract *continuously* from and after their appointment. The purpose of the stipulation was to dispense with the formality of proof of this fact. Furthermore, it is not disputed that defendants called to work at least two other employees of the Railway Company, immediately junior to plaintiff, in accordance with their seniority rating at set forth in the schedule of such rating as introduced in evidence. It seems to be generally admitted that many others have also been called. Defendants admit that the "Yardmen's Schedule" is a part of the contract of employment of those employees of the Railway Company who have been retained by them, and of those who have since been called to service; but they claim that they have not adopted the contract except as to those whom they choose to employ. We think they cannot have the benefits of the contract without assuming its burdens. They cannot adopt it in part and reject the balance. [Ward v. Kurn, *supra.*]

We hold that the demurrer was properly overruled and that it was not an abuse of discretion for the court to grant a new trial on the ground assigned.

The judgment is affirmed. *Campbell, C.*, concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.