STATE *ex rel.* NANCY JO SCOTT, *et al.*

*v.*

FRANK L. TAYLOR, *Judge, etc.,*
W. VA. STATE ARMORY BOARD, *et al., etc.*

(No. 12727)

*AND*

STATE *ex rel.* NANCY JO SCOTT, *et al.*

*v.*

FRANK L. TAYLOR, *Judge, etc.,*
W. VA. STATE ARMORY BOARD, *et al., etc.*

(No. 12728)

Submitted February 27, 1968.      Decided March 19, 1968.

BERRY, PRESIDENT, dissenting.

*Preiser, Greene & Hunt, W. Dale Greene, Donald R. Wilson,* for relators.

*Steptoe & Johnson, Edward W. Eardley,* for respondents.

BROWNING, JUDGE:

On February 13, 1968, the petitioners filed their petitions in this Court for a writ of mandamus and a writ of prohibition invoking thereby the original jurisdiction of the Court. A rule was granted in each case on February 13, 1968, returnable February 27, 1968, at which time briefs were filed and oral arguments made by counsel for the petitioners and the respondents. The relief sought by the petitioners is from an order entered by the Judge of the Circuit Court of Kanawha County on the 10th day of February, 1968, in a civil action pending therein in which the petitioners, Nancy Jo Scott and Louis Scott, were plaintiffs and the West Virginia State Armory Board; Gene H. Williams, Adjutant General of the State of West Virginia; Captain Basil O. Bennett, Armory Custodian; Glen W. Perry, Major Charles P. Miller, Jr., and Joe Keatley, Members of the Custodial Committee of the Oak Hill Armory,

were defendants, wherein the trial court granted the motion of counsel for the defendants that the ad damnum clause of the complaint of the plaintiffs be reduced from the stated sum of $100,000.00 to $50,000.00. The order itself does not state in what amount the ad damnum clause of the female plaintiff should be reduced and in what amount such clause of her husband should be reduced, but the complaint shows that the plaintiff Louis Scott alleged damages in the sum of $25,000.00 and damages in the sum of $75,000.00 were alleged by his wife, the plaintiff Nancy Jo Scott.

The order of the trial judge resulted from a stipulation entered into on the 18th day of August, 1967, between the plaintiffs, by counsel, and the defendants, who were represented only for that purpose, by Thomas B. Yost, an assistant attorney general of the State of West Virginia, which is set forth, in full, as follows:

"It is stipulated by the parties to this action, their counsel and attorneys respectively, that:

"WHEREAS, the Legislature of the State of West Virginia has expressly authorized the purchase of liability insurance with public monies naming the State and its agencies as insured, so as to provide a fund or source from which members of the public having claims against the State for damage resulting from acts of negligence on the part of the State, its agents or employees, may recover and inasmuch as such policies of insurance exist in the instant case, and

"WHEREAS, such policy or policies of insurance will tend to protect the assets and treasury of the State from claims or judgments that may be made or rendered as a result of this action to the extent of the limits of said policy or policies, and

"WHEREAS, the defendants, by their attorney, Thomas B. Yost, Assistant Attorney General, has heretofore filed a motion to dismiss this action predicated upon the sovereign immunity of the State from suit as provided in Article VI, Section 35, of the Constitution of West Virginia, and

"WHEREAS, it is one of the purposes of said Constitution to protect the treasury and assets of

the State from diminution and depletion that may result from judgments or claims rendered against the State in actions brought by members of the public, firms or corporations.

"NOW, THEREFORE, the parties hereto stipulate as follows:

"1. The plaintiffs agree that in the event they obtain a verdict against the defendants in this action, no attempt or effort will be made by them to enforce said verdict by claim, execution or otherwise personally against the defendants herein, or against the State of West Virginia or its agencies, but rather that the plaintiffs' recovery herein, if any, will be limited to the monies available from the policy or policies of insurance applicable to this action.

"2. In consideration of which the defendants agree to withdraw their motion to dismiss, heretofore filed in this action, without prejudice to them as to any action which the plaintiffs herein may bring at a later date based upon the occurrence or acts which form the basis for this action.

"Dated this 18th day of August, 1967."

The order filing the stipulation, to which all parties agreed, stated that "Said stipulation being to the effect that, in consideration of the agreement by the plaintiffs that in the event *a verdict* in their favor in this action is forthcoming, they will *limit any recovery thereunder* to the monies available from policies of insurance owned by the defendants herein *and will not seek to execute or levy or otherwise recover from the State* of West Virginia or the named defendants herein, the defendants will withdraw their motion to dismiss heretofore filed in this action." (Italics supplied.)

Before proceeding to state the reasons for the Court's decision upon the controlling issue in this case perhaps it would be appropriate to state what this Court is not deciding. We do not have before us and, of course, we are not deciding that the attorney general of this state possesses the authority to waive the sovereign immunity provision of Article VI, Section 35 of the Constitution.

This Court has held that not even the legislature itself may do that. *Ward* v. *Raleigh County Court,* 141 W. Va. 730, 93 S. E. 2d 44; *Hamill* v. *Koontz, Commr.,* 134 W. Va. 439, 59 S. E. 2d 879. The attorney general was utilizing his motion to dismiss to secure from the plaintiffs a clear and concise agreement that they would not attempt to satisfy any judgment that they might obtain against the defendants by any procedure against the state or its agencies in violation of Article VI, Section 35 of the Constitution but would be limited "to the monies available from the policy * * * of insurance applicable to this action." In this connection, it is clear from the language used in the stipulation that the parties thereto were aware of and were attempting to comply with the provisions of Chapter 29, Article 12, entitled "State Insurance," containing 11 sections, Code of West Virginia, as amended. This article was enacted as Chapter 96, Acts of the Legislature, Regular Session, 1957, and no part thereof has been interpreted or construed by this Court.

It is evident from even a casual examination of that article that the stipulation heretofore quoted in full could not be struck down as being violative of Article VI, Section 35 of the Constitution without raising grave doubts as to the validity of the pertinent provisions of Code, 29-12, as amended. That legislation created a three man "State board of insurance of West Virginia" appointed by the Governor. In Section 1 "Recognition is given to the fact," among others, that "the State and its officials, agents and employees engage in many governmental activities and services * * * and such activities and responsibilities are subject to liabilities which can and should be covered by a sound and adequate insurance program; * * *." The board is by Section 5 given "general supervision and control over the insurance of all State property, activities and responsibilities." The same section has this pertinent provision: "Any policy of insurance purchased or contracted for by the board shall provide that *the insurer shall be barred and estopped from relying upon the constitutional immunity of the State of West Virginia against claims or suits."* (Italics supplied.) This Court will not, of course, *ex mero*

*motu* raise and pass upon the question of the validity of the pertinent provisions of Article 12, and the other constitutional and judicial questions intrinsic thereto, when the insurance board is not represented by its counsel, the attorney general, who is by law the attorney for the state and all of its departments and agencies.

The principal issue before us in this proceeding concerns the power of the trial court, upon the stipulation in evidence, to compel the plaintiffs, over their objections, to reduce the amount laid in the ad damnum clause of their complaint. The pertinent part of the stipulation will be here repeated: "The plaintiffs agree that in the event they obtain a verdict against the defendants in this action, no attempt or effort will be made by them to enforce said verdict by claim, execution or otherwise personally against the defendants herein, or against the State of West Virginia or its agencies, but rather that the plaintiffs' recovery herein, if any, will be limited to the monies available from the policy or policies of insurance applicable to this action." Of course, if the trial court was correct in its construction of that language, that is, if it provided that the plaintiffs had agreed to reduce the sum of moneys sought in the ad damnum clause from $100,000.00 to $50,000.00, its action in requiring compliance therewith would not be disturbed. However, this Court is of the view that the trial court erroneously found that such provision of the stipulation made any such concession on the part of the plaintiffs. The ad damnum clause is not mentioned in the stipulation and neither is the sum of $100,000.00 or $50,000.00, and the language of the stipulation itself negatives the idea that any reference to the ad damnum clause was intended. We find the pertinent language of the stipulation to be clear and unambiguous and hold that it provides merely that if the plaintiffs get a verdict for a sum greater than $50,000.00, the amount of insurance coverage, that "no attempt or effort will be made by them to enforce said verdict [judgment] by claim, execution or otherwise personally against the defendants herein, or against the State of West Virginia or its agencies, * * *". It is true that in the succeeding clause of the stipulation the word "recovery"

is used but we are of the view that the use of that word does not create an ambiguity. We are cited to no case, and find none, in which the word "recovery" has been interpreted or defined as meaning the amount of damages laid in the ad damnum clause in an action to recover unliquidated damages.

The only other question which arises from this holding and which has caused this Court some concern is whether the action of the trial court in reducing the ad damnum clause from $100,000.00 to $50,000.00 constitutes merely reversible error or whether it is of such nature that it may be reached and corrected in prohibition. Article VIII, Section 3 of the Constitution provides in part that this Court "shall have original jurisdiction in cases of habeas corpus, mandamus, and prohibition. * * *." Code, 53-1-1, as amended, provides that "The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, *exceeds its legitimate powers.*" (Italics supplied.) In *Crawford* v. *Taylor,* 138 W. Va. 207, 75 S. E. 2d 370, this Court held, as it has in many other cases, that the "commission of error, mild or palpable, by a trial court does not warrant the issuance of a writ of prohibition if that court has jurisdiction and has not exceeded its legitimate powers." To the same effect is *Smith* v. *Winters,* 146 W. Va. 1018, 124 S. E. 2d 240. However, this Court has held in *Cunard Steamship Co.* v. *Hudson,* 93 W. Va. 209, 116 S. E. 511, that the section of the statute last quoted requires the issuance of a writ as a matter of right in a proper case, whether there is another remedy or not. "Prohibition may be invoked, though writ of error to a final judgment would be available, where it clearly appears upon the evidence submitted in support of a plea in abatement that the trial court is without jurisdiction." Syllabus, *Wolfe* v. *Shaw, Judge,* 113 W. Va. 735, 169 S. E. 325. And in *Brown* v. *Arnold,* 125 W. Va. 824, 26 S. E. 2d 238, this Court held that the extraordinary remedy of prohibition will issue as a

matter of right in the instances enumerated by the legislature. See also, *State ex rel. City of Huntington v. Lombardo, et al.*, 149 W. Va. 671, 143 S. E. 2d 535.

It is the view of this Court that, granting that the judge of the trial court had jurisdiction of the case before him, he exceeded his legitimate powers when, upon motion of counsel for the defendants, an order was entered peremptorily reducing the amount laid in the ad damnum clause from $100,000.00 to $50,000.00. Therefore the writ of prohibition will issue as prayed for inhibiting the respondents from further proceedings in the trial of the case which conform to that portion of the order of February 10, 1968, amending the complaint by reducing the ad damnum clause.

Inasmuch as we have determined that prohibition is a remedy by which the petitioners may have relief, the rule heretofore issued in mandamus will be discharged.

> *Writ of prohibition awarded;*
> *rule in mandamus discharged.*

BERRY, PRESIDENT, dissenting:

I respectfully dissent from the majority opinion in the prohibition proceeding, Case Number 12728, because I do not believe that a circuit court which is a constitutional court of general jurisdiction should be prohibited from trying a case set on its docket for trial based on the question involved in this proceeding. The plaintiff brought an action against a state agency, the Adjutant General of West Virginia and employees of the State having custody of the Armory Building at Oak Hill, West Virginia. The ad damnum clause in the complaint was for $100,000. The Attorney General waived the immunity of the State provided for in the Constitution of West Virginia. At the time this was done the following stipulation was entered into by the attorneys for the plaintiffs and the attorney for the State of West Virginia: "The plaintiffs agree that in the event they obtain a verdict against the defendants in this action, no attempt or effort will be made by them to enforce said verdict by claim, execution or otherwise

personally against the defendants herein, or against the State of West Virginia or its agencies, but rather that the plaintiffs' recovery herein, if any, will be limited to the monies available from the policy or policies of insurance applicable to this action.

"2. In consideration of which the defendants agree to withdraw their motion to dismiss, heretofore filed in this action, without prejudice to them as to any action which the plaintiffs herein may bring at a later date based upon the occurrence or acts which form the basis for this action."

There is no question but that the limit of liability in the insurance policy involved is $50,000 by virtue of the stipulation entered into by the parties, that is, it is the maximum amount that could be recovered in the trial of the case. If the case was tried the court would be compelled to instruct the jury that any recovery in connection with the case would be limited to $50,000.

It was argued by the attorneys for the petitioners when this case was presented that the reason they did not want the ad damnum clause limited in the complaint was that they might want to recover more than the limit of liability in the policy against the insurance company for some alleged negligence. This would have nothing whatsoever to do with the case instituted against the state agency because the insurance company is not a party to that action. If there were any merit to the contention made by the petitioner in this instance a separate suit would have to be instituted against the insurance company as a defendant.

It was held in the case of *Jenkins* v. *Montgomery,* 69 W. Va. 795, 796, 72 S. E. 1087, that: "The purpose of the *ad damnum* clause is to inform defendant of the amount of damages demanded * * *." This is apparently the general definition of the ad damnum clause which clearly states the reason for it in the New York case of *Natale* v. *Great Atlantic & Pacific Tea Co.,* 186 N. Y. S. 2d 795, 8 A. D. 2d 781, in the following language: "An 'ad damnum clause' merely informs an adversary of the maximum amount of

the claim asserted without being proof of injury or of liability." It was held in the case of *Gable* v. *The Pathfinder Irrigation District*, 159 Neb. 778, 68 N. W. 2d 500, that: "The office of the 'ad damnum' in a pleading is to fix the amount beyond which a party may not recover on the trial of his action."

It was held in the case of *Colonial Village Restaurants, Inc.* v. *Colonial Village, Inc.*, 315 Ill. App. 237, 42 N. E. 2d 849, that: "Plaintiff's recovery was limited to maximum amount designated in stipulation notwithstanding evidence showed that plaintiff was entitled to recover more." The case of *Lawry* v. *Yeaton* (Maine), 23 Atl. 2d 890, in my opinion, clearly answers the question involved in the case at bar, wherein it was held in a per curiam opinion to the effect that if the jury assessed damages in an amount agreed upon by the plaintiff the ad damnum clause will be deemed to have been amended in that amount.

The trial court had jurisdiction to try this action. It had jurisdiction to construe the stipulation entered into by the parties. The controlling part of the stipulation agreed to by the plaintiffs' attorney reads as follows: "* * * plaintiffs' recovery herein, if any, will be limited to the monies available from the policy or policies of insurance applicable to this action." It will be noted it was stipulated by the plaintiffs that recovery for both would be limited to $50,000 and there was no separation of amounts claimed by each in the stipulation. It would therefore be for the jury to fix the amount of recovery, if any, for each plaintiff.

The trial court construed this to mean that the recovery against the defendants was limited to $50,000 and that inasmuch as it was so limited the ad damnum clause should not be in excess of the maximum amount of recovery. This the court had the authority to do and I am of the opinion that the trial court was correct in its interpretation of the stipulation and construction thereof. In cases where a stipulation has been involved the construction of such

stipulation is tested on an appeal and not an extraordinary proceeding. It has been held to be merely an abuse of discretion if incorrect and not a matter of ascertaining whether the court exceeded its legitimate powers. *Washington Luna Park Co.* v. *Goodrich,* 110 Va. 692, 66 S. E. 977; *Pioneer Irr. Dist.* v. *American Ditch Association,* 50 Idaho 732, 1 P. 2d 196, *Billingslea* v. *Billingslea,* 194 Okla. 400, 152 P. 2d 276; *Bradford* v. *Kurn,* 235 Mo. App. 1282, 146 S. W. 2d 644. The same rules apply to the construction of stipulations that are applicable to contracts. 83 C. J. S., Stipulations, §11.

It can hardly be questioned that in cases where recovery is limited to a certain amount such as the amount of recovery in a wrongful death action an ad damnum clause for double the amount of recovery limited by statute should be reduced to the amount of recovery allowed by the statute. This is the same procedure that was used in the case at bar when the trial court reduced the ad damnum clause to comply with the limit of recovery stipulated by the parties.

The only reason for refusing to recognize the provisions of the stipulation and the construction thereof by the trial court in the instant case, which, in my opinion, limits the amount of recovery and automatically limits the ad damnum clause in the complaint, is to first hold that the stipulation is void, and if that be held void the parties would be placed in the same status they were in before the stipulation was entered into, and apparently there can be no recovery against the defendants if such action was taken.

For the reasons stated herein, I would refuse to grant the writ.