# CHARLESTON.

## WATKINS *v.* COUNTY COURT.

Submitted January 18th, 1888.—Decided February 4th, 1888.

1. COUNTY COURT—LIABILITY OF—PERSONAL INJURIES.

   A County Court is not responsible in damages, at the suit of an individual, for injuries sustained by him in consequence of the neglect of the County Court, or any of its officers or agents, to perform any duty enjoined by law, unless such action against it was, expressly or by necessary implication, given by statute. (p. 658.)

2. COUNTY COURT.

   If a dead tree, standing within five feet of a public road, falls upon a person travelling along such road, the County Court can not be sued by such person because of the injuries he sustained by the falling of such tree upon him. (p. 663.)

Statement of the case by GREEN, JUDGE:

This was an action on the case, brought in the Circuit Court of Preston on March 16th, 1883, against the County Court of Preston, to recover for injuries sustained by the plaintiff by the falling upon him, while travelling along a public road in said county, of a dead tree which had been for many years standing within five feet of the edge of a road, in an inclosed field, which tree the surveyor of the road had for many years known was so decayed as to be liable at any time to fall across the road. The plaintiff was severely injured on March 21st, 1882, by this tree falling upon him as above stated; one of his legs being broken, and his breastbone and back being also permanently injured. He was confined to his bed for a month, and to his room for two months longer, and paid physician's bills for attending him to the amount of $35. After a year, when this suit was brought, he was still unable to do much work, and it was probable that these injuries would trouble him more and more as long as he lived.

If this was a good cause of action, the declaration would have been good, it being in proper form. It was demurred

to by the defendant, and the demurrer was overruled. The plaintiff proved the above facts, and the defendant demurred to the evidence. The jury assessed the plaintiff's damages at $340.00, subject to the opinion of the court on the demurrer to the evidence. The plaintiff asked for a new trial because of the inadequacy of the damages assessed. The court overruled his motion. On April 19th, 1885, the court sustained the demurrer to the plaintiff's evidence, and rendered judgment that the plaintiff take nothing by his suit, and the defendant recover of him his costs. From this judgment a writ of error has been awarded the plaintiff.

*P. J. Crogan* for plaintiff in error.

*Neil J. Fortney* for defendant in error.

GREEN, JUDGE:

The only legal question involved in this case is whether on March 22, 1882, a County Court in this State was responsible to an individual in damages for an injury sustained by him from the falling on him of a dead tree, while travelling along a public road in the county; it being shown that this dead tree had been standing in an inclosed field adjoining the public road, within five feet of the edge of the road, for many years, and that it had been known to the surveyor of the road for years that it was so much decayed that it might at any time fall across the road.

The County Court of each county was then, as it is now, a corporation. See section 1, ch. 39, Code 1887, p. 275. The County Courts, by statute, were, as they are now, required to cause any road, bridge, or public landing belonging to them to be kept in good repair and condition. See section 23, ch. 39, Code 1887, p. 284. The County Court, as required by our constitution, appoints a surveyor of roads for each precinct in the county. Section 4, ch. 43, Code 1887, p. 317. On March 22, 1882, among other duties of the surveyor of roads was this: that "he shall superintend the county roads and bridges, cause the same to be put in good order and repair, of the proper width, well drained, and to be cleared and kept clear of rocks, falling timber, land-slides, and other obstructions." On March 25, 1882, this law was amended, and made

to read as it now does: "He shall superintend the county roads and bridges, cause the same to be put in good condition and repair, of the proper width, well drained, and to be cleared and kept clear of rocks, falling timber, land-slides, carcases of dead animals, and other obstruction, and remove all dead timber standing within thirty feet thereof."

By statute-law which has always been in force in this State, it is provided that "any person who sustains an injury to his person or property by reason of a public road or bridge in a county being out of repair may recover all damages sustained by him by reason of such injury, in an action on the case, in any court of competent jurisdiction, against the County Court." This being the extent of the liability in damages to any person imposed by statute for neglect of duty in reference to the public roads, either by a County Court, or by a surveyor of roads appointed by a County Court, can the County Court be subjected by suit to the payment of damages, in any other case than that specified in the statute, because of injury resulting from a neglect of duty by it, or by its surveyor of roads, such, for instance, as the failure of the surveyor of roads "to remove all dead timber standing within thirty feet of a public road,"—a duty now expressly imposed upon him, and which it is claimed was impliedly imposed upon him on March 22, 1882?

The counties are political divisions of the State, created for public convenience; and to the County Courts, by our constitution and laws, are committed certain legislative, executive, and judicial powers directly connected with the local affairs of the county. These powers, as well as the limits of the county, may be increased or diminished at the pleasure of the Legislature, so far as that body is not restrained by the constitution; and it does habitually exercise such control over the County Courts, and over all county agents appointed by them requiring such public duties and functions to be performed by them as it deems proper. It is true that County Courts are declared to be corporations, and, as such, they may be sued; but being political corporations, created thus, and organized for political purposes connected with the administration of the State government, they obviously differ entirely from private corporations, and are es-

sentially different from towns and cities, which are municipal corporations proper, and which are called into existence by either the solicitation or procurement of the persons composing them, for the promotion of their local convenience and private advantage. Counties, on the other hand, and County Courts, are corporations in the State, and are created almost exclusively with a view to the policy of the State at large, and to carry out this general public policy. See *Hamilton* v. *Mighels*, 7 Ohio St. 109, and *Talbots* v. *Queen Anne Co.*, 50 Md. 245.

If a private corporation or an individual owe a duty to a person, and he is directly injured by the neglect of such duty, such person so injured would by the common-law have right of action against such private corporation or individual, as the case might be, for damages for an injury the immediate consequence of the neglect of such duty. Private corporations, when they are chartered in consideration of certain privileges and immunities conferred on them for their private advantage, or that of the individual corporators, assume to perform certain duties for the advantage of individuals in the community; and if, through the neglect to perform such duties, an individual to whom such corporation owes such duty suffers an injury as the immediate consequence of such neglect, as a matter of course he may recover of it, in an action on the case by the common law, the damages he has thus sustained from its negligence, or from the negligence of its servants or agents.

But it would seem to follow from the fact that as counties or County Courts, or other political corporations who manage their affairs, are created, not for any private advantage, but almost exclusively with a view to the policy of the State, and charged by law with the superintendence and administration of the local affairs of a county, as a mode of carrying out such public policy, they would not be liable in damages for any neglect of a public duty to any individual who had directly suffered an injury from such neglect, unless the statute had, expressly or by necessary implication, made them responsible as corporations. At common-law, such political corporation or such county would not be liable in

any civil suit for damages resulting from a neglect of any public duty. And, in accordance with these views, it has been almost universally held, both in England and in this country, that neither a county, nor a political corporation managing its local affairs, causing public roads and bridges to be made and kept in repair, public school-houses to be built and kept in repair, and other public duties to be performed, are never liable, as corporations, to be sued by any individual for damages sustained by their neglect to perform such duties, or by the neglect of public officers or agents appointed by them to perform such duties, except when they are made responsible as corporations, either expressly or by necessary implication, for damages resulting from neglect of the duty. It was so held in *Askew* v. *Hale Co.*, 54 Ala. 639; *Granger* v. *Pulaski Co.*, 26 Ark. 37; *Cromwell* v. *Sonoma Co.*, 25 Cal. 313; *Larkin* v. *County of Saginaw*, 11 Mich. 88; *Brabham* v. *Supervisors*, 54 Miss. 363; *Reardon* v. *St. Louis Co.*, 36 Mo. 555.

The same views have been sustained in decisions rendered in other States; and I know of but one State where any decision has been rendered in conflict with these views, and that is Indiana, where it has been held that the board of commissioners of a county was liable for damages in an action brought by an individual for an injury sustained by him from neglect to keep in repair a public bridge, as required by law, though the statute-law did not authorize such a suit to be brought against them by an individual. See *House* v. *Board, etc.*, 60 Ind. 580.

There have been, it is true, numerous decisions whereby towns and cities have been held responsible for negligence in the performance of duties imposed on them by their charter, whereby individuals sustained damages, though neither their charter nor any statute-law, subjected them to suit for damages for injuries resulting from the neglect of such duty; and that, too, when the duty was one of a public character, and from the performance of which the corporation was to receive no compensation or special advantage. These decisions were based on the ground that the city or town had, by accepting its charter, imposed on itself the duty and burden of performing these public acts, such as building

or repairing bridges and streets, in consideration of the privileges and immunities conferred upon it by its charter; and having thus voluntarily agreed, as it were, to perform such duties, though of a public character, for which it received no compensation when performed, yet as it had received a valuable consideration for assuming such public burden by the privileges and immunities conferred on it by its charter it ought to be held responsible, if a person suffers from its neglect of such duty. The case in the Supreme Court of *Weightman* v. *Washington,* 1 Black 39, is an example of such cases. But the reasoning on which all such cases are founded shows that they would have no application to counties or to County Courts in our State, or other political corporations managing the affairs of a county. They never voluntarily assume any burdens in consideration of privileges and immunities conferred upon them by charters.

There are other cases which utterly repudiate these views, and in which it is held that towns and cities are in no case responsible to individuals for injuries sustained from their neglect to perform any duty, unless their charters or some statute, expressly or by fair implication, make them liable to such civil suit for damages. These decisions are based on the ground that there is no legitimate difference between towns and cities and counties, and that they are all political divisions of the State, controlled by political corporations organized for this purpose. There are not many decisions of this character. *Winbigler* v. *City of Los Angelos,* 45 Cal. 36, is one of them. There are, however, numerous and highly respectable decisions, which occupy a middle position between these two classes of cases, and which hold that no city or town can be held responsible for damages, at the suit of an individual, for a failure to perform any public duty, such as to keep its streets in repair, unless its charter or some statute makes it liable to such suit; but they were liable to such suit for damages sustained by an individual, when, having undertaken to construct waterworks and wharves, for the use of which they charge, they failed to construct them in a safe and proper manner, whereby some individual suffered special damages. But, if the failure was to construct or keep up such works on a scale such as would be most beneficial to the inhabitants,

no one would have an action therefor. In such instances they would be responsible in damages to the same extent, and in the same cases, as a private corporation. The case of *Murphy* v. *Lowell*, 124 Mass. 564, is an example of such decisions. These decisions are based on the mixed character of such municipal corporations, being partly for the pecuniary advantage of the corporation, as in the case of private corporations. This whole matter is thoroughly discussed in *Hill* v. *Boston*, 122 Mass. 344. It has also been discussed by this Court in *Mendel* v. *City of Wheeling*, 28 W. Va. 233, *Wilson* v. *City of Wheeling*, 19 W. Va. 323 and *Sheff* v. *City of Huntington*, 16 W. Va. 307.

I deem it unnecessary to consider this subject, as the decisions are almost uniform in holding cities and towns to a much more extended liability than counties, for reasons above stated. Our conclusion is, both on reason and authority, that a County Court in this State is never responsible in an action brought by an individual for damages for any injury sustained by him in consequence of the County Court, or any officer or agent of it, failing to perform any duty imposed upon it, excepting when by statute it is, expressly or by necessary implication, rendered liable to such action.

Now, with reference to the duties of the County Court in connection with public roads, the only responsibility to an individual for damages for the failure of the County Court to perform any duty is the responsibility imposed on it by the fifty third section of chapter 43, Code W. Va. 1887, p. 331, before quoted. That gives an action against a County Court to any one, who has sustained injury to his person or property by reason of a public road or bridge in the county being out of repair. Of course, therefore, even if it were admitted that it was the duty of the county precinct surveyor to cut down the dead tree standing within five feet of the public road, and that by reason of his not performing this duty, the plaintiff, W. H. Watkins, while travelling along the public road, suffered serious personal injury from this dead tree falling upon him, neither this nor any other action could be sustained by him against the County Court to recover damages for such injury, as

it can not be pretended that an action is, expressly or by necessary implication, given against the County Court for the failure to cut down dead trees standing near the public road.

The truth is that when the accident occurred, on March 22, 1882, it was not the duty of the road surveyor to cut down this or any other dead tree standing near the edge of a public road and liable to fall across such road. When this State was formed, the statute law provided that "every surveyor of a road shall superintend the roads in his precinct. He shall cause the same to be kept clear, smoothed of rocks and obstructions, of necessary width, well drained, and otherwise in good order, and *secure from the falling of dead timber therein.*" See Code Va. 1860, ch. 52, § 25, p. 301. The words above italicized were left out of the statute in the Code of West Virginia of 1868, and the law was thus made to read : "Every surveyor of roads shall superintend the county roads and bridges in his road precinct, cause the same to be put in good order and repair, of the proper width, well drained and to be cleared and kept clear of rocks, falling timber, land-slides and other obstructions." See Code 1868, ch. 43, § 7, p. 267.

It seems to me that the Legislature intended, by leaving out the words, " and secure from the falling of dead timber therein," to relieve the road surveyor from the duty of cutting down timber standing near the public road, and which might fall therein. This they did, I suppose, because it was thought that the public convenience was sufficiently provided for by the closing paragraph of this section, which was not in the law before; it was: "When a county road is suddenly obstructed, at any time of the year, by the fall of rock or timber, land-slide, or other cause, he shall immediately order out such number of persons liable to work on the roads, (notwithstanding such persons may have performed their full number of days' work on the roads,) and, without avoidable delay, cause such obstruction to be removed from the road." The Legislature, by this new provision, provided for the speedy removal from the road of any dead tree which might fall therein, and having done so, they seem to have thought that they might properly re-

lieve the surveyors of roads of the onerous duty of cutting down all the dead timber which might, when it fell, obstruct the road. I do not suppose they ever contemplated or intended to provide against the very remote possibility of such dead tree, if permitted to stand, falling on a person travelling along the road when it fell. Such an accident would not probably occur in any one county in the State in a century.

The counsel for the plaintiff in error argues that the use of the word "falling," in Code of 1868, ch. 43, § 7, above quoted, instead of the more proper word "fallen," indicates that the Legislature did not intend to make any change in the law of the Code of 1860, ch. 52, § 25, as above quoted. I can not put this interpretation on section 7, ch. 43, Code 1868. This section remained unchanged until March 25, 1882, three days after the dead tree standing near the public road fell on the plaintiff and injured him, for which this suit was brought against the County Court of Preston. If I am right, there was on March 22, 1882, no duty imposed by law on the surveyor of roads to cut down this dead tree before it fell. It is possible that he, or any other person, might have cut down this tree, thus abating it as a nuisance, though I am not satisfied he had a right to do so, and that he would not have committed a trespass on the owner of the land on which the tree stood by so doing. But, be that as it may, the law as it was on March 22, 1882, did not impose on the surveyor of the road the duty of cutting down this tree. On March 25, 1882, the law, as we have seen, was changed, and the surveyor of roads was required "to remove all dead timber standing within thirty feet of the road;" and this remains the law. See Code W. Va. 1887, ch. 43, § 7, p. 318.

If the plaintiff in error is right in supposing that substantially this duty was imposed on the surveyor of roads by the Code of 1868, ch. 43, § 7, p. 267, still the willful and knowing neglect of his duty by the surveyor of the road in not cutting down this tree would, as we have seen, not render the County Court of Preston liable to be sued for damages which were sustained by the plaintiff, W. H. Watkins, by this dead tree falling upon him, as a conse-

84

quence of such wilful neglect of duty by the surveyor of the road, appointed by this County Court; as the statute law of this State never has provided, expressly or by necessary implication, that a County Court should be responsible, at the suit of an individual, for the neglect of such duty to have such trees cut down, even if it was on March 22, 1882, a duty imposed on them.

I am therefore of opinion that the only error commited by the Circuit Court in this case was in its failure to sustain the demurrer to the plaintiff's declaration. This, of course, he can not complain of in this Court. The court did not err in sustaining the defendant's demurrer to the plaintiff's evidence, and in rendering the judgment of April 14, 1885 ; which judgment must be affirmed, and the defendant in error must recover of the plaintiff in error its costs in this Court expended, and $30.00 damages.

AFFIRMED.