## CHARLESTON.

### SHIPLEY v. COUNTY COURT OF JEFFERSON COUNTY.

Submitted September 7, 1912. Decided June 24, 1913.

1. BRIDGES—*Defective Bridge—Liability for Personal Injuries—Proof.*

    The administrator of an employee of a county court, killed by the falling of a public county bridge, under the weight of a traction engine and stone crusher on which he was riding, while acting within the scope of his employment, has a statutory right of action under section 53 of chapter 43 of the Code, and need not ascertain or show any defect in the bridge, causing it to give way. (p. 657).

2. STATUTES—*Construction.*

    A statute is always construed in the light of its purpose and the evil it was designed to remedy. (p. 657).

    (MILLER, JUDGE, absent).

Error to Circuit Court, Jefferson County.

Action by Fonrose Shipley, Administrator, etc., against the County Court of Jefferson County. On a demurrer to the evi-

dence the jury rendered a conditional verdict for plaintiff, and, the court having sustained the demurrer and dismissed the action, plaintiff brings error.

*Reversed and Judgment Rendered on Conditional Verdict.*

*Geo. M. Beltzhoover, Jr.,* and *Faulkner, Walker & Wood,* for plaintiff in error.

*Forrest W. Brown, Geo. D. Moore* and *James M. Mason, Jr.,* for defendant in error.

POFFENBARGER, PRESIDENT:

On a demurrer to the evidence in this case, the jury rendered a conditional verdict of $2,000.00 for the plaintiff, and, the court having sustained the demurrer and dismissed the action, the plaintiff obtained a writ of error to the judgment.

The action has for its purpose recovery of damages for the wrongful death of the plaintiff's decedent, occasioned by the breaking and falling of a highway bridge, under the weight of a traction engine and stone crusher while passing over it, on which the deceased was, at the time, riding. .

As the decedent, at the time of his death, was engaged in the service of the county court and sustained the injury from which he died by reason of an alleged defect in the bridge while in the course of his employment, the evidence tending to prove defectiveness of the bridge must be dealt with specially. This relation raises a highly important question. If his cause of action, in view of this relation, is founded upon the common law, imposing upon the master the duty to exercise reasonable care to provide his servant a safe place in which to work, it was incumbent upon the plaintiff to prove the defect in the bridge and omission of inspection to discover it and make repairs. But, if it rests upon the statute making the county court liable for injuries to any person by reason of a defect in a public road or bridge, or by reason of any such road or bridge being out of repair, Code ch. 43, sec. 53, it is unnecessary to prove lack of safety in the bridge or any defect therein, for this statute has been construed as imposing absolute liability for injuries for such defects, whether latent or obvious, discoverable or undiscoverable, and exercise or non-exercise of care and diligence on the part of the county court is altogether immaterial. *O'Hanlin*

v. *Oil Co.,* 54 W. Va. 510; *Van Pelt* v. *Clarksburg,* 42 W. Va. 218; *Yaeger* v. *Bluefield,* 40 W. Va. 484; *Gibson* v. *Huntington,* 38 W. Va. 177; *Biggs* v. *Huntington,* 32 W. Va. 55; *Chapman* v. *Milton,* 31 W. Va. 384.

At the common law, there was no liabliity for personal injury occasioned by defects in highways, for the duty of keeping them in repair was regarded as one due to the public and not to the individual, wherefore failure to perform this duty was a mere *nonfeasance* and not a *misfeasance* against the individual. Thomp. Neg., sec. 5919. The statute was passed to remedy this defect in the common law. Therefore, to determine the extent of liability, it is necessary only to look to the terms of the statute, unless there are exceptions by way of implication. That there are some is very well settled. Contributory negligence is an effectual bar to the right of recovery, and it is about the only defense recognized by our decisions so far. The decedent though a servant of the county court was within the terms of the statute. He was a person injured by a defect in the bridge. Upon what ground can he be deemed to be excepted from the guaranties given by the statute? As the relation of master and servant existed between him and the defendant, it may be said plausibly that this case is not within the evil the statute was designed to correct, if the common law gave a right of action in such cases. Though there are some decisions in which municipal corporations have been held liable to their employees for negligent injury, upon common law principles, the general rule is to the contrary. Labatt, Master & Serv.; sec. 847; Sherm. & Redf. Neg. 253, 255. Thus, an employe of a municipal corporation, engaged in the operation of a stone crusher to prepare materials for constructing and repairing highways, injured by a defect in the machine, was denied right of recovery. *Colwell* v. *Waterbury,* 74 Conn. 568. So an employe injured by a vicious horse furnished him by a *quasi*-municipal corporation, engaged in work done for the state, was denied right of recovery. *Backer* v. *Park,* 66 Ill. App. 507. To the same general effect, see *Pettingill* v. *Chelsea,* 161 Mass. 368; *Hill* v. *Boston,* 122 Mass. 344; *Taggart* v. *Fall River,* 170 Mass. 325. General principles stated in *Mendel* v. *Wheeling,* 28 W. Va. 233, tend to the same conclusion. See also *Nichol* v. *Water Co.,* 53 W. Va. 348. Principles declared

in *Shaw* v. *City of Charleston*, 57 W. Va. 433, *Brown's Adm'r* v. *Guyandott*, 34 W. Va. 299, *Gibson* v. *Huntington*, 38 W. Va. 177, and *Bartlett* v. *Clarksburg*, 45 W. Va. 292, would deny recovery in such cases, under the principles of the common law, absolving municipal corporations from liability for injuries resulting from negligence on their part in the exercise of their governmental and discretionary powers. A servant of a county court injured by a defect in a highway, while in its service, cannot be excepted from the general terms of the statute, therefore, on the theory that this case was not within the mischief the legislature intended to remedy. Having no right of action against his employer for negligent injury, he was in the same situation as that of a traveler injured in the same way. In other words, it cannot be assumed that the legislature intended to except him on the ground that the common law afforded him a remedy, for he had no such remedy at common law.

The result of this conclusion accords with that found in *Vickers* v. *Cloud County*, 59 Kan. 86, in which a workman, employed by the county and injured by the falling of a bridge, was declared to be within the protection of a statute in all substantial respects like the one here under consideration.

Under this construction of the statute, it becomes unnecessary to devote any time to the consideration of the sufficiency of the evidence to establish any particular defect in the bridge. As has already been shown, the statute makes the county court an insurer of the safety of persons using its highways and bridges, in the absence of contributory negligence or other intervening cause. Therefore, only the evidence tending to prove negligence on the part of the driver of the engine as the proximate cause of the injury, need be considerd.

This ground of defense is that as the engine was passing from the bridge onto the roadway, it was driven so nearly to the east side of the bridge that the rim of the rear wheel struck the diagonal, constituting part of the truss, and pressed it over so as to deprive it of its efficacy as a support to the bridge. To sustain this theory of defense, the strength of the bridge is relied upon. Evidence was adduced tending to prove that it had for years carried vehicles similar to the one under which it went down. One of these was an engine weighing nine tons

and a separator five tons. The engine and crusher under which it gave way had passed over it the preceding day. It did not give way until after the front wheels of the engine had passed off of it and on to the ground, nor while the combined weight of the entire engine and crusher were upon it, nor until the weight of. the rear portion of the engine was divided between the earth and the bridge, nor until the weight became lighter than it had been at any other time during the passage. The woodwork was unbroken, and very slight defects, if any, were found in the iron. There is some controversy as to whether any of the iron work was broken, although some of it was admittedly bent. Though the bridge had been erected in 1891 and was about thirteen years old at the time of the injury,. it had been painted several times and had not been seriously impaired by rust. There was evidence tending to prove the passage had been made at an unnecessarily rapid rate of speed and under unnecessarily heavy steam. The approach to the bridge was down grade, and although the engine and crusher were equipped with brakes they were evidently not used. It was the northeast part of the truss that went down. The witness Golliday, standing in the door of a mill on the west side of the road, 30 or 40 yards distant, and looking at the crusher and the engine, says he saw "the lower side of the bridge go out and the thing sink from sight"; and again said "I saw between the engine and the crusher this side go out and out of sight." By this he evidently meant the east side of the truss. In the argument are found calculations based upon evidence of marks on the boards which constituted the floor of the bridge and the ground at the end of it, tending to show probability that the rim of the hind wheel struck the truss. These calculations involve the width of the bridge between the trusses and the length of the boards used for the floor. After the east side of the bridge had sunk to a certain point, the hind wheels of the engine and those of the crusher, slipped toward the east leaving marks on the boards. Neither the distance of these marks from the ends of the boards nor from the inside of the truss was measured. The witness spoke in general terms. He says the scar on the board he noticed showed the wheel had commenced to slide at a point four or five feet from the side of the bridge. On cross-examination, he said he meant four and a half or five

feet from the ends of the boards. The boards extended beyond the truss. Counting the distance from the inside of the truss, the wheels would have struck the one on the opposite side. Counting from the ends of the boards, it would have missed it by the very narrow margin of two or three inches. As to the distance the front wheels had gone beyond the end of the bridge onto the road, when the accident occurred, relied upon in these calculations, the evidence is equally uncertain and indefinite. Two of them give four to five feet, and the third one six to eight feet. Calculations based upon the testimony of another one as to the position of the hind wheels on the bridge, make it two feet eight inches to four feet eight inches.

In opposition to this testimony, slight evidence of defects in the bridge was adduced. Witness Viand says he helped to construct the bridge and that a brace, put in near the point at which it broke down, was defective in this, that it had but one rivet at a point at which it should have had two. Under an erroneous direction from the superintendent, one of the rivet holes was cut out entirely and the other was partially cut, but the brace was put in nevertheless. He further says some of the bridge irons were pretty badly rusted. Witness Kisner says some of the irons were partly rusted in two where they broke and that the bottom cord was broken a little way from the northeast abutment. Witness Clark also says some of the irons were pretty rusty. The effect of Viand's testimony was considerably impaired by his admissions on cross-examination and there was testimony tending to prove the brace he spoke of as having been defective was still intact after the bridge had fallen, and besides this brace was probably one that sustained very little, if any, weight.

As has been stated, the calculations relied upon as conclusively proving contact of the rear wheel of the engine with the truss of the bridge does not possess the probative force claimed for them, because it is based upon uncertain data. However, it does conclusively show the wheel must have been very close to the truss and thus raises a probability of contact. The tests of sufficiency and safety borne by the bridge for many years, the day before the accident and on the very day thereof, renders it more or less improbable that the accident was due to weight upon it. The uncontradicted testimony of Golliday, the only

eye witness who undertook to describe the character of the fall, showing the careening of the truss, followed by subsidence of that side of the bridge, tends directly to prove the theory of the defense. The slight testimony above detailed tending to prove defectiveness of materials and workmanship and the breaking of some portions of the iron might be considered as overcome by the tests of sufficiency and safety already referred to. Upon these considerations, I am inclined to the opinion that there is a preponderence of evidence in favor of the defendant, sufficient to sustain the action of the court upon the demurrer, but my associates are clearly of the opinion that there is no clear and decided preponderance and that the issue made by the evidence was one proper for jury determination. As there is no difference of opinion among us as to the law governing demurrers to evidence, there is no occasion for inquiry as to legal principles. When the evidence clearly and decidedly preponderates in favor of the demurrant, all agree the demurrer should be sustained. We differ only as to the existence of such a preponderance in the evidence adduced in this case.

As in the opinion of a majority of the members of the Court, the case should have been submitted to the jury, but for interposition of the demurrer, the judgment will be reversed and a judgment rendered here for the amount of the conditional verdict.

*Reversed, and Judgment Rendered on Conditional Verdict.*