# CHARLESTON.

LULA D. BOYER v. COUNTY COURT OF KANAWHA COUNTY.

Submitted November 21, 1922. Decided November 28, 1922.

1. MUNICIPAL CORPORATIONS—*Rule as to Liability for Unlawful Acts of Officers and Agents Stated.*

   As a general rule a public corporation is not responsible for the injurious consequences of the unlawful acts of its officers and agents, though done *colore officii,* but when such corporation expressly authorizes such an act or, when done, adopts and ratifies it, and retains and enjoys the benefits arising therefrom, it is liable in damages. (p. 428).

2. COUNTIES—*Liable for Reasonable Value of Coal Removed by Agents Under Authority of County Court Without Authority of Owner.*

   A county court which expressly authorizes and directs its agents and servants to enter upon the lands of another and

extract the coal therefrom for the purpose of using the same in the performance of a work which said county court may lawfully and of right perform, knowing, or under such a state of facts as that it must have known, that it had no right or authority to remove such coal, will be liable to the owner of the land for the reasonable value of the coal so taken at the time of its removal from the premises of such owner, without any reduction of such value because of the expense of mining.   (p. 428.)

Error to Circuit Court, Kanawha County.

Action by Lula D. Boyer against the County Court of Kanawha County.   Judgment of dismissal, and plaintiff brings error.

*Affirmed.*

*Murray Briggs,* for plaintiff in error.
*Townsend & Bock,* for defendant in error.

RITZ, JUDGE:

The plaintiff by this writ of error seeks reversal of a judgment of the Circuit Court of Kanawha County reversing the judgment of the Court of Common Pleas of that county, and dismissing her action.

The suit was brought for the purpose of recovering damages for coal taken from the plaintiff's premises by the defendant, and converting it to its own uses.   It seems that the plaintiff is the owner of a small farm lying east of the city of Charleston in Kanawha county, containing about forty-one acres, a part of which at least was underlaid with a vein of merchantable coal.   She had leased this tract of land to a man by the name of Joseph Bleau by a lease in writing dated the first day of March, 1915, for the term of five years. This lease was only for the purpose of farming the land.   The defendant, in the years 1916 and 1917 was engaged in constructing a county road near the farm of the plaintiff, and in the construction of this road it used some road rollers and some engines in connection with rock crushers, and for the purpose of operating these appliances it was necessary to procure a supply of coal.   There was a spring upon the land

of the plaintiff, and in June, 1916, the plaintiff entered into a contract with the county court of Kanawha county by which the said county court was given the right to use water from this spring for its road camp purposes, and on the 7th of May, 1917, the plaintiff also by a deed conveyed to the county court a strip of land thirty feet wide through and over the above mentioned farm as a right-of-way for a road. With full knowledge that the plaintiff was the owner of this farm, and that Joseph Bleau was only the lessee thereof, the defendant entered into a contract with the said Joseph Bleau by which he undertook to grant to it the right to mine coal from this tract of land for the use of the defendant's appliances aforesaid, and to receive as a consideration for the permission thus given one ton out of each four tons mined. This was subsequently changed so that the defendant received all of the coal mined and Bleau a cash consideration. In the spring of 1920 the plaintiff learned that coal was being mined upon her farm in violation of her rights, and upon inquiry found that it was being done by the defendant. She required the defendant to desist, and demanded that it pay her compensation for the injury done. This the defendant refused to do, and this suit resulted. Upon the trial of the case, in addition to the above facts, it was agreed that there had been mined and removed from the farm by the defendant five hundred and fifty tons of coal, and evidence was introduced showing the market value of coal of this character during the time the operations were carried on. The Court of Common Pleas instructed the jury that under the facts proven plaintiff was entitled to recover, and that the measure of her recovery was the market value of the five hundred and fifty tons of coal received by the defendant at the mouth of the mine from which it had been excavated, without allowing any deduction for the cost of mining. The jury under this instruction returned a verdict for the sum of $1,237.50. A motion to set this verdict aside was overruled, and judgment rendered in favor of the plaintiff thereon. Upon a writ of error prosecuted to the Circuit Court of Kanawha County that court reversed the judgment of the Court of Common

Pleas, and held that the plaintiff could recover nothing at all in this action, and dismissed the same without prejudice to the right of the plaintiff to bring what the court conceived to be a proper suit for such relief as she might be entitled to.

The principal contention of the defendant is that the defendant, being a public corporation, is not liable for the tortious acts of its officers and agents, and cannot, therefore, be sued in an action of trespass on the case, this being such an action. This contention may be true if the doctrine exists as broadly as stated. It was held by this Court in the cases of *Watkins* v. *County Court,* 30 W. Va. 657; and *Douglass* v. *County Court,* 90 W. Va. 47, that ordinarily a county court is not liable for damages resulting to another from the tortious acts of its agents and servants, and the doctrine as applied to these cases is undoubtedly correct. But is it entirely accurate to say that a public corporation cannot be sued at all in tort unless there is a statute specifically giving the right to sue? In this case the county court itself, by a solemn contract in writing, contracted to commit the tort complained of, that is, it agreed to enter upon the plaintiff's land under a contract with one whom it knew had no right to make it, and extract therefrom the plaintiff's coal, and convert it to its own use. It cannot be doubted that the county court had a right to buy coal for the purposes for which this coal was appropriated by it. After thus entering into the contract it proceeded to mine the plaintiff's coal, and after it was so mined to remove it from the land and convert it to its own use. Not only that, but it paid to the plaintiff's tenants considerable sums of money for the privilege of entering upon the land, and, of course, these sums of money cannot be treated as anything else than a consideration for the disturbance caused to the tenant's occupancy. That cannot be considered as in any sense compensation for something which the defendant knew the tenant had no right to sell. We say the defendant knew the tenant had no right to give it authority to mine this coal, for the reason that the very contract that it made with the tenant shows that he was simply a tenant of the plaintiff, and that

the plaintiff owned the land, and then the contract entered into by the defendant with the plaintiff for the use of the spring, and the deed taken by it from the plaintiff for the right-of-way above referred to, clearly informed it that the plaintiff was the owner of the land. Not only that, but when it was sued and called upon to compensate the plaintiff for the injury that had been inflicted, instead of repudiating the acts of its agents and servants who had committed the trespass, it affirmed those acts and claimed the benefit of them, and contended that it had a right under the contract with the plaintiff's tenant to do the things which had been done. It relied upon that contract as a part of its defense to this suit, and it introduced in evidence, or attempted to introduce, checks showing the payments made by it to the plaintiff's tenant for the coal taken from plaintiff's land. It would be a singular holding, indeed, to say that the defendant in this case could repudiate the acts of its agents so far as they might inflict liability upon it, but affirm and ratify those acts so far as any benefit might be derived to it therefrom. While it is true as a general proposition that a public corporation, such as a county court, is not liable for the torts committed by its officers or agents, even when they are acting *colore officii,* yet when such a corporation expressly authorizes the act before it is done, or after it is done, accepts the benefits to be derived from it, and approves and ratifies it, as was done in this case, it will be liable just the same as an individual. This proposition is well supported by the authorities. *Thayer* v. *The City of Boston,* 19 Pickering, 511; *Salt Lake City* v. *Hollister,* 118 U. S. 256; *County of Chester* v. *Brower,* 117 Pa. St. 647; *Wendel* v. *Spokane County,* 27 Wash. 121; *Schussler* v. *Board of Commissioners,* 67 Minn. 412. In this case the defendant not only contracted for the removal of the plaintiff's coal, but it expressly ratified the acts done by its officers and agents by accepting the fruits of the trespass committed by them, and in its defense to this action attempts to repudiate such acts, so far as they might be to its disadvantage, and to claim the full benefit of them so far as any advantage can be derived therefrom. This it

cannot do. It is in no different position in this case than a private individual, and must be held to the same measure of accountability. Under the decision of this Court in the case of *Petrelli* v. *Coal Company,* 86 W. Va. 607, it was clearly such a trespasser as makes it liable, at least, for the reasonable value of the coal taken at the time it converted it to its uses. The title to the coal after it had been extracted from the mine was still in the plaintiff. The fact that her rights had been invaded by one who must be considered as a trespasser, acting with full knowledge, cannot change the title to the coal thus extracted from the mine. It is quite clear that if the plaintiff had discovered this trespass after the coal had been mined, but before it had been removed and consumed by the defendant, she could have prevented the defendant from taking it, and the defendant could not have charged her with anything for the cost of mining it. Can it be placed in any better position because it has succeeded in consuming her property? There is no question in this case of exemplary or punitive damages as argued on behalf of the defendant. The plaintiff does not even ask for consequential damages to her real estate by reason of the trespass. All she is asking is the actual, reasonable value of her property at the time the defendant removed it from her premises and converted it to its uses, and this she is clearly entitled to under our authorities.

The contention that the action of trespass on the case cannot be maintained is without merit. As before stated, under the facts in this case, the defendant is liable for its tort to the same extent as an individual, and the same form of action lies to secure vindication of the plaintiff's rights. The authorities above cited clearly sustain this doctrine.

We are, therefore, of opinion to reverse the judgment of the Circuit Court of Kanawha County complained of, and to affirm the judgment of the Court of Common Pleas.

*Affirmed.*