WALTER M. ELSWICK,' ¿fudge.
The evidence in these- two claims' was heard together and the damages' arising- being brought-1 about' b'jr the same cause both claims are treated in-the one-opinion."'
'These claims grow out of the collapse of a section of a swinging bridge'-which" spanned the Little Kanawha river from the *34 hard-surfaced state road running from Glenville toward Burns-ville and connected with a secondary road across the river leading to Gilmer Station in Gilmer county, West Virginia. The bridge in question was constructed in 1924 (record p. 67) by wooden framework fastened to iron rods attached to cables, with wooden stringers and wooden floors, with an iron or sheet of metal runways on top. (Record p. 68). There was a sign hanging on the cross beams overhead of the bridge which read “not safe for over three tons gross load'' (Love record p. 106), although there is no evidence in the record to show that this bridge had been inspected or for what particular reason this sign was displayed. (Record pp. 177, 179).
It further appears from the evidence that about midday on the 24th day of March 1939, Harry Lowe, one of the claimants, was driving his truck across this bridge in the direction of Gilmer Station with H. L. Wildman riding with him in the cab of the truck and one Clifton Taylor riding on the truck bed when one section of the bridge collapsed causing the truck and the occupants to fall through into the Little Kanawha river about 30 to 40 feet below the bridge. 'The cab of the truck turned upside down and H. L. Wildman was killed by the fall, he being found dead when his body was soon thereafter rescued from the river. The said truck owned by the said Harry Love was a V-8 Ford 1937 model two-ton truck and had a value of from seven hundred to nine hundred dollars (record pp. 27 and 66) and was completely demolished leaving a salvage value of about $25.00 (Love record p. 28). Harry Love received a cut or tear of one ear and an arm injury (Darnell record p. 65), and testified that he expended from $7.50 to $9.50 on treatment by a physician and was disabled from work from thirty-five to forty days (Love record p. 89).
It appears from the evidence that the truck fully equipped with steel bed body was registered or rated with the road commission as weighing 5060 pounds (Mitchell record p. 144), and that the steel bed body which was not being used at the time of the bridge collapse weighed from 1600 to 1800 pounds (Love record p. 133). The truck bed being used at the time was of *35 wooden framework and as testified by Harry Love was approximately 7 feet wide, 13 feet long and 16 inches high (Love record p. 129), or as testified by R. Hardman was 12 feet 8 inches long, 6 feet 8 inches wide and 2 feet deep (Hardman record p. 161); but the weight of this wooden bed body does not appear from the evidence. When crossing the bridge Harry Love testified that he was hauling stovewood blocks cut approximately 18 inches long from green oak slabs and had them piled in loosely with the bed about two-thirds full without an endgate on the truck bed (Love record pp. 26, 56 and 127); that he might have had a cord of slab wood on the truck and in his opinion the stovewood which he was hauling would have weighed 1700 or 1800 pounds (Love record p. 55), and that the weight of himself and two passengers was approximately 445 pounds (Love record p. 55); that in the year 1937 he had hauled two and three tons of coal over the same bridge (Love record p. 54). There was evidence adduced that there is a wide variance in the weight of different kinds of wood (Darnell record p. 119 and Lewis record p. 182). With the exception of an offhand opinion (record p. 182) of one witness, deemed somewhat speculative due to an expressed lack of familiarity of the variances of wood weights (record pp. 175, 176, 181 and 182) there was no evidence adduced showing that the wood on the truck weighed more than 1700 or 1800 pounds.
On the day before the bridge collapsed a number of truck loads of lumber had been hauled over this bridge by other persons, (Darnell record p. 74). The bridge had been weakened by hauling lumber across it (Dye record p. 150).
Before approaching the bridge it appears from the evidence that Harry Love made a remark to Wildman, the decedent of some nature such as “The bridge might break down with you” (Love record p. 38) and Wildman replied with a remark of some nature such as “He will go down if I did” (Love record p. 38) or “If we go down, we all go down together.” (Love record p. 51).
*36 However, from the evidence we find that the cause of the collapse of the bridge was the decay of the support timbers called crossbeams'permitting the rods suspended to the cables to pull through the crossbeams at the section where the truck fell through and causing the whole section to collapse. (Love record p. 44 and p. 98, Darnell record pp. 72, 73, Lewis record p. 184 and Hudnall record pp. 200, 201). Some of the crossbeams had badly decayed at the ends where the rods ran through the beams. A piece of one of these crossbeams was sawed off and produced as an exhibit, marked “exhibit e” (record p. 90). It was partially decayed or rotten (Darnell record p. 90), badly decayed (Lewis record p. 184). From the evidence of the witnesses Hudnall and Darnell it appears that there were other beams similarly decayed. The witness Hud-nall testified that most of the beam ends were defective, probably half of them on the bridge decayed like the exhibit presented to the court (Hudnall record pp. 199,201). The witness Lewis, an inspector of bridges, testified that if he had made an inspection of the bridge and found these timbers in this decayed condition he would have condemned the bridge for decayed timber, (Lewis record p. 189); that there would have been no difficulty for an inspector to discover rotten crossbeams (Lewis record p. 192). The witness Hudnall, an assistant road maintenance foreman, testified that he had notified Mr. Gainer, the superintendent of roads of Gilmer county, of these defective and decayed timbers and that there would be no difficulty to see or locate these defective timbers. This notice was given the last time he made repairs on the bridge about five to six months before it collapsed. (Hudnall record pp. 201-202).
It appears from the evidence that this bridge was in constant use by the public (Dye record p. 155, Hardman record p. 165) and that it was the only outlet at the time across the river to Gilmer Station (Darnell record p. 73).
By chapter 84 of the acts of the legislature of 1941 it was declared that:
*37 “Whereas on March 24, 1939, and for some years prior to that date, the state road commission and the state road commissioner had jurisdiction and were charged with the maintenance of said public road or highway, in Gilmer county, West Virginia, leading from state highway number 5, formerly state highway number 35, over and across the Littla Kanawha river to Gilmer Station in said county; and
“Whereas, included in said public road, described as aforesaid, and as a part thereof, was a suspension bridge suspended across said Little Kanawha river; and
“Whereas, because of its defective condition said bridge collapsed on March 24, 1939, while H. L. Wild-man was lawfully traveling on said road and bridge, and said H. L. Wildman as a result of the collapse of said bridge sustained injuries resulting in his instant death;”
And by said act of the Legislature it was provided:
“The state road commission is hereby authorized and empowered, in its discretion, to pay to Kay Wildman, administrator of the estate of H. L. Wildman, deceased, a sum not to exceed ten thousand dollars to be distributed by the said administrator as provided in section six, article seven, chapter fifty-five of the code of West Virginia.”
Chapter 85 of said acts of the Legislature of 1941 contained a similar declaration and recital as contained in said chapter! 84 describing the cause and resulting personal injuries to Harry Love and the destruction of his truck, and provided:
“That the state road commission is hereby authorized and empowered, in its discretion, to pay to Harry Love a sum not to exceed seven hundred and fifty dollars as and for damages sustained by him in the collapse of a public road or highway bridge near Gilmer Station in Gilmer county.”
No particular fund is designated by either of these acts from which any payment may be made and no listings were *38 made under the general budget appropriations bill by the Legislature. Hence it would appear that there are no funds available with the road commission during the fiscal biennium from which any payments could have been made under said acts.
From a consideration of the evidence we are of the opinion that the bridge was in a decayed and defective condition at the time of its collapse, and that an inspection of this bridge by the road commission would have revealed its condition, necessitating repair of the bridge under the law; that the road commission was negligent in failing to inspect and repair the bridge and that its collapse was caused by the decayed condition at the time. But we are further of the opinion from the evidence that both the decedent, H. L. Wildman, and the claimant, Harry Love, were aware of the fact that there was a certain amount of risk and hazard involved in crossing the bridge as they undertook to do, considering their conversations immediately prior to entering the bridge, its known and obvious condition apparent to them when using same, the uncertainty as to the weight-load of the truck, and all circumstances surrounding the case. As to the decedent, Wildman, it might be said that while he had the right to travel on the bridge and highway a truck of the kind loaded with green oak slabs would not be construed as a passenger vehicle when for his own safety in view of the warning sign he could have walked across the bridge having a span of from 180 to 200 feet. And as to the claimant, Love, he knew that the bridge “wiggled and wabbled around” under a truck load and the weight of the truck body and bed and the load and the warning sign should all have been heeded and observed; all should have been within his knowledge au d considered for his safety; the court cannot say with definite certainty from the evidence just what was the weight of the load and wooden bed.
However, since there' is some question as to whether the bridge would have been safe for a weight of less than three tons we are of the opinion that there is liability upon the part of the state road commission but such liability should be lim *39 ited and considered in respect to the risk and hazard assumed by the decedent H. L. Wildman and the claimant Love in crossing the bridge without heeding the warning sign, the apparent condition of the bridge, and having in mind at the time some certainty as to the weight or burden placed upon the bridge. Tests of the strength of a bridge bearing a warning sign should not be made by those using same as a gamble on the weight of the load. That justice and equity may be done between the parties in such a case we are of the opinion that contributory negligence should not be considered as a complete bar of reilef or of liability when it appears from the evidence that there is negligence and neglect on the part of the employees of the road commission and such negligence contributed to and was the proximate cause of the injuries suffered by claimants. In our opinion such evidence should be weighed and considered in the light of the circumstances in fixing the amount of the damages on which to make an award to which claimants may be entitled; and it is thought that this was the intent of the Legislature when it was left to the discretion of the road commission to determine the. amount of damages, if any, as just and proper to be paid in these cases considered herein.
Considering the wise and just policy of the Legislature in the passage of these acts and other acts involving similar relief we are of the opinion that while our courts in the cases of Phillips v. Ritchie County Court, 31 W. Va. 477, 7 S. E. 427 and Watkins v. County Court, 30 W. Va. 657, 5 S. E. 654, no doubt cautiously considered the statutes existing at the time, we find nothing in these decisions to prevent the Legislature from granting relief for injuries sustained by reason of the negligence and neglect of employees of the state road commission to comply with the general law; nor do we find any principle involved in these cases to have prevented the Legislature from imposing by statute such additional duties and liabilities upon the county courts respecting the maintenance of roads and bridges.
It appears from the evidence that the decedent H. L. Wild-man left surviving him a widow and nine children, the young *40 est of whom was born June 10, 1934; that he was a sober and industrious man of modest financial circumstances, in apparent good health, and was 58 years, 11 months and 11 days of age at the time of his death. He had earned at times as much as $200.00 per month, and for six or seven years prior to his death had earned about twelve to thirteen hundred dollars per year.
From all the evidence adduced in the Wildman case, weighed in the light of the foregoing views, we are of the opinion that an award of five thousand dollars ($5000.00) should be made to Ray Wildman, as administrator of the estate of H. L. Wild-can, deceased, as a just and reasonable award of damages under the circumstances of the case for the death of the said H. L. Wildman, conditioned that such an award be paid only after evidence is produced to the state road commission that said administrator has entered into an additional bond in an amount equal to said award, with security to be approved by the county court of Gilmer county, West Virginia, and that said administrator shall execute and deliver a full and complete release, releasing and discharging said state road commission from all claims, demands and damages whatsoever by reason of the said death of the said H. L. Wildman, deceased, and it was so ordered.
And from all the evidence adduced in the Harry Love case, weighed in the light of the foregoing views, we are of the opinion that an award of five hundred dollars ($500.00) should be made to Harry Love as a just and reasonable award of damages under the circumstances of the case for personal injuries suffered by him as well as damages to his truck by reason of the collapse of said bridge, conditioned that the said Harry Love shall execute and deliver a full and complete release, releasing and discharging said state road commission from all claims, demands and damages whatsoever sustained by reason of personal injuries and damages sustained to his truck arising from the collapse of said bridge, and it was so ordered.
And it appearing that no appropriations were made available for the payment of these damages by the road commis *41 sion for the fiscal biennium,.it is recommended that such appropriations be listed in the appropriation budget bill of the next regular session of the Legislature for the payment of said awards.