JOHN C. WARD, *Sheriff, etc.*

v.

THE COUNTY COURT OF RALEIGH COUNTY, *et al.*

(No. 10783)

Submitted April 17, 1956.        Decided May 29, 1956.

*Thornhill & Thornhill,* for plaintiff in error.

*C. Berkley Lilly, J. W. Maxwell, Anthony J. Sparacino,* for defendant in error.

GIVEN, JUDGE:

John C. Ward, Sheriff of Raleigh County, as administrator of the estate of John Willard Crawford, deceased, instituted an action in the Circuit Court of Raleigh County, against the County Court of Raleigh County; H. G. Farmer, as President of the County Court of Raleigh County; and A. J. Lilly and E. Van Dorsey, members of the County Court of Raleigh County; Jack A. Nuckols, former member of the County Court of Raleigh County, and acting as such at the time of the arising of the cause of action hereinafter set forth, and the Board of Park Commissioners of Raleigh County; Walter Duncan, Harold Lambert, Nena S. Ross, Henry Lawson, Varney Harmon, Elinor Hurt, Simeon Warren and George W. Bright, Members of the Board of Park Commissioners of Raleigh County, for the recovery of damages for the death of his decedent, John Willard Crawford, by drowning, alleged to have been the result of negligence of defendants. Separate demurrers to the declaration were filed by defendants, all of which were sustained except the demurrer of defendant Raleigh County Park Board, which was overruled December 10, 1953. No appellate action was sought as to the action of the trial court in sustaining the several demurrers mentioned. The circuit court, on motion of the Raleigh County Park Board, set aside a verdict returned against the park

board in the amount of $7,500.00 and, after again considering the demurrer to the declaration filed by the Raleigh County Park Board, sustained the demurrer and dismissed the action as to the Raleigh County Park Board. On November 14, 1955, a writ of error to that judgment was granted by this Court.

The Raleigh County Park Board was created by Chapter 151 of the 1941 Acts of the Legislature. That Act provided that the park board should consist of eight members, to be appointed by the County Court of Raleigh County, and was made a "body corporate". By Section 1 of the Act it was provided that "The county court of Raleigh county shall have and is hereby given power to acquire lands or leasehold estates or other interests therein for, and to create, establish and maintain parks, parkways, bridges, playgrounds, athletic fields, stadiums, swimming pools and recreational centers, and to expend moneys for such purposes * * *". The County Court of Raleigh County was authorized, with certain limitations, to issue and sell bonds, and to increase levies for such purposes. Section 8 of the Act provided that " 'Raleigh County Park Board' shall have supervisory authority over all parks, parkways, bridges, playgrounds, athletic fields, stadiums, swimming pools and recreational centers created or established under authority of this act. The county court shall appoint only such engineers, supervisors and other employees as may be recommended to it by the park board.

"No expenditures shall be made for the acquisition of any land, for the construction of any improvements, or for the maintenance and operation of any parks, parkways, bridges, playgrounds, athletic fields, stadiums, swimming pools and recreational centers created or established under authority of this act, except upon the recommendation and approval of the park board." Section 10 provides: "All funds realized by the county court of Raleigh county from the sale of bonds, or from increased levies, for the purposes enumerated in section

one of this act, shall be expended only as approved by 'Raleigh County Park Board' ". Section 12 reads: "The county court of Raleigh county may, from time to time, authorize 'Raleigh County Park Board' to expend moneys for engineering, planning and otherwise as to the court may seem advisable, but before any expenditures are authorized to be made by the park board, the limit of such expenditures shall be fixed by the court. Neither the court nor the county shall, in any event, be liable for any expenditures made or indebtedness incurred by the park board in excess of the amounts from time to time theretofore authorized by the court." And Section 13 contains this provision: "In the management and operation of any of the projects enumerated in section one of this act, 'Raleigh County Park Board' may, with the approval of the county court, establish and collect fair and reasonable charges for automobile parking, use of athletic fields or other facilities for private use or where admission is charged, and for such other services and facilities as it may be determined by the park board that charges shall be made * * *".

The pertinent allegations contained in the declaration are to the effect that the county court, pursuant to the powers granted it by the Act mentioned, at the time of the drowning of plaintiff's decedent, was the owner of and maintained a large, deep, artificial lake "designed for and used by the public generally for swimming and boating purposes"; that supervision and control of the lake had been delegated to the Raleigh County Park Board; that the lake was "operated on a commercial basis and for profit to the said defendants in that certain parts of said Park were rented to persons for hire and profit * * * and certain boats were for hire and profit rented to anyone who might apply therefor and pay the demanded charge"; and that plaintiff's decedent "rented and hired from the defendants one of said power boats along with the services of an operator"; that it became and was the duty of defendant to furnish boats and equipment "in a good state of repair"; to "have and maintain on said

boat life preservers and other safety equipment; and to keep in charge of the operation and control of said boat competent persons who would exercise reasonable and ordinary care for the safety of their passengers". The declaration then charges the breach of such duties and resultant damages.

Certain questions are attempted to be raised as to the actions of the trial court relating to the setting aside of the verdict of the jury. Since a consideration of such questions depends on the evidence taken at the trial before the jury, which evidence has not been made part of the record before this Court by any bill of exceptions, such questions can not now be considered. As to such questions, we must assume that the action of the trial court was correct. The pleadings, of course, are before the Court by virtue of statutory provisions, and the controlling question raised by them is whether the defendant now before the Court, The Raleigh County Park Board, a public corporation, is immune from suit as an agent, arm or subdivision of the State.

Section 35 of Article VI of the State Constitution reads: "The State of West Virginia shall never be made defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee."

In *Hamill* v. *Koontz, Tax Commissioner,* 134 W. Va. 439, 59 S. E. 2d 879, the Court held that a proceeding prosecuted under authority of a statute, against the State Tax Commissioner, for the recovery of a sum erroneously paid to the State as a tax, was "a suit against the State in violation of Article VI, Section 35, of the Constitution of West Virginia, and can not be maintained". In *Schippa* v. *West Virginia Liquor Control Commission,* 132 W. Va. 51, 53 S. E. 2d 609, it was held that the "State Liquor Control Commission is an agency

of the State, engaged in the performance of governmental functions", and as such immune from suit. In *Mahone* v. *State Road Commission*, 99 W. Va. 397, 129 S. E. 320, the State Road Commission was held to be "a direct governmental agency" and "not subject to an action for tort". See *Stewart* v. *State Road Commission*, 117 W. Va. 352, 185 S. E. 567; *Watts* v. *State Road Commission*, 117 W. Va. 398, 185 S. E. 570.

In *Miller* v. *State Board of Agriculture*, 46 W. Va. 192, 32 S. E. 1007, it was held: "2. As the state cannot be sued, *mandamus* or other judicial process will not lie against state officers or boards to compel them to execute an executory contract between an individual and the state. Though the state is not in name a party, such suit is against it, within the meaning of the provision of the Constitution prohibiting suit against the state." In *Barber* v. *Spencer State Hospital*, 95 W. Va. 463, 121 S. E. 497, the action was for recovery of damages for death claimed to have resulted from negligence of the defendant hospital, a state institution "for insane persons, supported entirely by state funds". The State agency was held immune from suit. In *State ex rel. Gordon* v. *State Board of Control*, 85 W. Va. 739, 102 S. E. 688, the action was in mandamus to compel the defendant to perform covenants of a contract made between it and a contractor, and it was held that "Such a proceeding is virtually one against the State and cannot be maintained". See *Miller Supply Co.* v. *State Board of Control*, 72 W. Va. 524, 78 S. E. 672. In *City of Charleston* v. *Southeastern Construction Co.*, 134 W. Va. 666, 64 S. E. 2d 676, the Court held: "1. The State Office Building Commission is a State agency, and, as such, is an arm of the State and under Section 35, Article VI of the Constitution of this State is immune from suit."

In *Bradfield v. Board of Education of Pleasants County, et al.*, 128 W. Va. 228, 36 S. E. 2d 512, it was held that the defendant "is not liable for injuries caused by the negligence of its employees while engaged in the per-

formance of a governmental function". See *Utz* v. *Board of Education of County of Brooke, et al.,* 126 W. Va. 823, 30 S. E. 2d 342; *Board of Education of the County of Raleigh* v. *Commercial Casualty Insurance Co.,* 116 W. Va. 503, 182 S. E. 87; *Boice* v. *Board of Education of Rock District et al.,* 111 W. Va. 95, 160 S. E. 566; *Krutili* v. *Board of Education, Butler District,* 99 W. Va. 466, 129 S. E. 486. In each of these cases there seems to be a holding, or a clear implication, to the effect that a board of education, though a governmental agency, will be subject to an action where a legislative act attempts to create such liability, or where the action of the board of education does not pertain to governmental functions. It must be kept in mind that the constitutional provisions relating to immunity of the State, and its agencies, can not be waived by the Legislature. That immunity is absolute. *Hamill* v. *Koontz, Tax Commissioner,* 134 W. Va. 439, 59 S. E. 2d 879; *State ex rel. Cashman* v. *Sims,* 130 W. Va. 430, 43 S. E. 2d 805, 172 A.L.R. 1389; *Hayes* v. *Town of Cedar Grove,* 126 W. Va. 828, 30 S. E. 2d 726, 156 A.L.R. 702; *Utz* v. *Board of Education of County of Brooke et al.,* 126 W. Va. 823, 30 S. E. 2d 342; *Stewart* v. *State Road Commission,* 117 W. Va. 352, 185 S. E. 567.

In *Watkins* v. *County Court,* 30 W. Va. 657, 5 S. E. 654, the Court held: "1. A County Court is not responsible in damages, at the suit of an individual, for injuries sustained by him in consequence of the neglect of the County Court, or any of its officers, or agents, to perform any duty enjoined by law, unless such action against it was, expressly or by necessary implication, given by statute."

In *Douglass, Adm'r.* v. *County Court of Roane County,* 90 W. Va. 47, 110 S. E. 439, the Court held: "1. The construction, maintenance and repair of public roads of a county, by its county court, are governmental functions; wherefore, for an injury inflicted upon a citizen, by the negligence of its agent, servant or employee, in the execution of such work, it is not liable, unless the act causing the injury was of such character as to impose liabil-

ity under the terms and provisions of a statute." See *Moss Iron Works* v. *County Court,* 89 W. Va. 367, 109 S. E. 343; *Corrigan* v. *Board of Commissioners of Ohio County,* 74 W. Va. 89, 81 S. E. 566; *Shipley* v. *County Court of Jefferson County,* 72 W. Va. 656, 78 S. E. 792; *Rader* v. *County Court of Roane County,* 94 W. Va. 493, 119 S. E. 479; *Boyer* v. *County Court of Kanawha County,* 92 W. Va. 424, 114 S. E. 750.

In *Van Gilder* v. *City of Morgantown,* 136 W. Va. 831, 68 S. E. 2d 746, it was held : "The rental of hangar space for the storage of a privately owned airplane at an airport operated by a municipality under the control and supervision of The West Virginia State Aeronautics Commission as provided by Section 3 of Chapter 12 of the Acts of 1947 is the performance of a governmental function under Section 10 of that Act. The sovereign immunity of the State from suit under Section 35 of Article VI of our Constitution extends to such municipality in the performance of that function." In the opinion, the Court stated: "It is argued that the rental of hangar space is in its nature proprietary and under no circumstances a governmental function. If we considered ourselves at liberty to decide this case under what may be termed the common-law principle distinguishing between proprietary and governmental functions, we would feel impelled to agree. Instead, however, we are here confronted with Chapters 11 [Code (Michie, 1947 Supp.) 8-11-8] and 12 of the Act of 1947 dealing with the same subject matter and Chapter 11 expressly providing that its use of terms or phrases shall be construed in the manner terms and phrases are expressly defined in Chapter 12. We are therefore of the opinion that the two chapters should be read *in pari materia.* Section 6 of Chapter 11 provides expressly that the rental of hangar space 'or any other facilities' shall in no way be prevented by the terms of the act. Section 10 of Chapter 12 makes the 'operation of airports and air navigation facilities, * * * ' the exercise of a governmental function. Plainly, Chapter 11 specifies the rental of

hangar space as an incidental facility in the operation of an airport and just as plainly Chapter 12 fixes the performance of undertakings of that nature in the category of governmental functions * * *".

In *Wigal, Adm'x* v. *City of Parkersburg*, 74 W. Va. 25, 81 S. E. 554, the Court held: "1. A municipality maintaining a waterworks system for supplying its inhabitants with water for domestic use, is not thereby performing a governmental function, and is liable for acts of negligence respecting such business just as a private individual." See *Hayes* v. *Town of Cedar Grove*, 126 W. Va. 823, 30 S. E. 2d 726; *Hyre* v. *Brown*, 102 W. Va. 505, 135 S. E. 656; *Gibson* v. *City of Huntington*, 38 W. Va. 177, 18 S. E. 447; *Mendel & Co.* v. *City of Wheeling*, 28 W. Va. 233.

In *Tompkins* v. *The Kanawha Board*, 19 W. Va. 257, damages were sought against the defendant, "a body politic and corporate", created by an Act of the Legislature for the purpose of "providing more effectual means for the improvement of the Kanawha river". The Court held: "Although the State of West Virginia owns the property under the control and supervision of the Kanawha Board, yet said Kanawha Board is liable to a suit for damages occasioned by its negligence in failing to discharge its duties; and such suit is not against the State within the meaning of section 35 of Article VI of the Constitution, which declares: 'The State of West Virginia shall never be made defendant in any court of law or equity.' "

Notwithstanding the clear constitutional provision inhibiting any suit or action against the State "or any of its officers, or agents", *Watkins* v. *County Court, supra,* as an examination of the cases reveals, proceedings have been maintained and recoveries permitted against county courts, boards of education, municipalities and certain corporate bodies created primarily for governmental purposes. Such a result appears to have been reached solely on the basis of the determination of the question

as to whether the functions of the particular arm or agency of the government were proprietary or governmental, in the circumstances of the particular case. This seems to be clearly pointed out by the statement made in the *Van Gilder* case, quoted above. In that case, the Court properly gave weight to the expression of the Legislature as to the nature of the functions of the corporate body there involved. Apparently the decision in that case would have been different had the expression not been contained in the Act. In view of these many decisions, we necessarily hold that the Raleigh County Park Board is not entitled to the immunity afforded an arm or agency of the State by the provision of the Constitution quoted above, if the damages claimed resulted from the performance of proprietary, as distinguished from governmental, functions.

In *Ashworth* v. *City of Clarksburg*, 118 W. Va. 476, 190 S. E. 763, the Court held: "1. A public park is ground used for public recreation. The use varies as the popular recreational preferences vary. Swimming is a popular and healthful recreation, and maintenance of a public swimming pool is within the charter power of a city to maintain parks. 2. A municipality acts as a proprietor in maintaining a public park. In this capacity the municipality must exercise ordinary care, and is liable to one injured through a breach of that duty."

In *Warden* v. *City of Grafton*, 99 W. Va. 249, 128 S. E. 375, the Court held: "It is the duty of a city owning and operating a public park under authority granted by its charter, to exercise ordinary care in the construction and maintenance of mechanical appliances erected therein for the amusement and recreation of the public frequenting such park; and for a breach of such duty the city will be liable in damages to one injured while using such appliance for the purpose for which it was intended."

These decisions, we believe, are clear authority for the proposition that the operation of the lake property by the Raleigh County Park Board, at the time of the

drowning of plaintiff's decedent, was proprietary, not governmental. We find no sound reason for holding a municipality liable for such operations and not holding a public corporation of the nature of the Raleigh County Park Board liable for the same type of operations. If the function is proprietary when performed by a municipality, it is proprietary when performed by such a corporation as the Raleigh County Park Board. See *Rhodes* v. *City of Asheville*, 230 N. C. 134, 52 S. E. 2d 371; *Henderson* v. *Twin Falls County*, 56 Idaho 124, 50 P. 2d 597, 101 A.L.R. 1151, 13 M.J., Municipal Corporations, Section 102.

The contention is made that since the Act creating the Raleigh County Park Board and declaring it to be a "body corporate" did not specifically provide that the corporation could sue or be sued, it is not amenable to the instant action. We think there is no merit in the contention. Code, 31-1-3, as amended, provides that "Every corporation * * * may sue or be sued, complain and defend".

The judgment of the Circuit Court of Raleigh County complained of is affirmed in so far as it sets aside the verdict of the jury, but is reversed in so far as it sustains the demurrer of the Raleigh County Park Board to the declaration of plaintiff and in so far as it dismisses the action as to the Raleigh County Park Board, and the case is remanded to that court.

*Affirmed in part; reversed in part; remanded.*